A98A1272. HORTON v. THE STATE.
(507 SE2d 221)

BEASLEY, Judge.

Convicted and sentenced on three counts of armed robbery (OCGA § 16-8-41) and one count of theft by taking (OCGA § 16-8-2), Vershorn Horton enumerates three errors: (i) the court found he did not establish a prima facie case of race discrimination in the State's exercise of its peremptory jury challenges; (ii) the court improperly intimated he was guilty when it informed the jury that a co-indictee had pled guilty and had been sentenced; and (iii) he was denied effective assistance by counsel's failing to move for a mistrial when the court spoke of the co-indictee's guilty plea.

1. Horton is of a minority race, and the jury venire of thirty-four persons included six members of that race, two of whom were stricken by the State in exercising six peremptory strikes. Horton struck another, and the remaining three members of his race served on the twelve-person jury.

After jury selection, Horton objected under *Batson v. Kentucky*[1] and asked the court to require the State to identify the reasons for striking the two. The court found he had not established a prima facie case of purposeful race discrimination and denied the request.

A *Batson* challenge is not only to protect a defendant's right to a trial by his peers. Since *Strauder v. West Virginia*,[2] the United States Supreme Court has "recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror. [Cits.]"[3] Moreover, "[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. [Cits.]"[4] Thus there are three values to be served by assuring race-neutral jury selection.[5] Consequently, racially-motivated exclusion of members of the majority race is also prohibited.[6]

"A *Batson* challenge initiates a three-step process requiring first that the party challenging the strikes establish a prima facie inference that the strikes were exercised with racially discriminatory intent. If a prima facie case of racial discrimination is established, under the second and third steps, the burden of production shifts to the proponent of the strikes to give race-neutral reasons for the strikes, and the trial court then considers the reasons given and decides whether the challenger has proven discriminatory intent. During this process, the burden of persuasion as to discriminatory intent does not shift from [but] remains with the challenger."[7] The court did not reach the second and third steps because it ruled that Horton failed to establish a prima facie case of racial discrimination.

Showing a prima facie case of discrimination is a necessary first step. Otherwise every peremptory strike could be challenged on grounds of race discrimination and the prosecutor then required to articulate her race-neutral grounds for exclusion. Every juror has a race societally burdened with stereotypical barnacles, and a defendant, regardless of his own race, has standing to challenge a prosecu-

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[2] 100 U. S. 303, 308 (25 LE 664) (1880).

[3] *Batson*, supra, 476 U. S. at 87.

[4] Id.; see *Georgia v. McCollum*, 505 U. S. 42, 48-49 (112 SC 2348, 120 LE2d 33) (1992); *Powers v. Ohio*, 499 U. S. 400, 406-407 (111 SC 1364, 113 LE2d 411) (1991).

[5] *Coker v. State*, 207 Ga. App. 482, 485 (428 SE2d 578) (1993) (Beasley, J., concurring specially).

[6] *Chandler v. State*, 266 Ga. 509 (2) (467 SE2d 562) (1996), illustrates the application of this principle. It was held that the striking of whites was not shown to be racially discriminatory.

[7] (Citation omitted.) *Griffeth v. State*, 224 Ga. App. 462, 463 (2) (480 SE2d 889) (1997); see *United States v. Stewart*, 65 F3d 918, 924-926 (11th Cir. 1995).

tor's strike of a juror as racially motivated and to require an explanation.[8] Yet "peremptory" means "arbitrary; not requiring any cause to be shown."[9] A "peremptory challenge" is "[t]he right to challenge a juror without assigning a reason for the challenge."[10] A constitutionally prohibited reason, however, is race, and it must be excised lest it infect the process with racial prejudice. But the striking of any person does not give rise to a presumption of race-based exclusion. Absent a prima facie showing of racial discrimination, requiring a party to articulate those reasons defeats the purpose of peremptory challenges, which challenges are a "historical privilege" viewed as "one means of assuring the selection of a qualified and unbiased jury [cit.]."[11]

*Batson* emphasized that showing that a member of defendant's race was stricken from the jury is alone insufficient to meet the prima facie threshold. The trial court begins with the presumption that the prosecutor, like all oath-bound officers of the court, exercised the State's challenges lawfully. Thus, "the burden is . . . on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination."[12] Beyond showing that jurors of a particular race were stricken, "defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."[13]

*Batson* outlined various avenues available to make such a showing. "For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. [The United States Supreme Court expressed] confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."[14]

Horton chose to pursue the avenue of showing a statistical pattern of discrimination. Such a prima facie showing is manifest in a "total or seriously disproportionate exclusion" of a race from the jury

---

[8] *Powers*, supra, 499 U. S. at 416; *Peters v. Kiff*, 407 U. S. 493, 504 (92 SC 2163, 33 LE2d 83) (1972).

[9] Black's Law Dictionary, p. 1023 (5th ed. 1979).

[10] Id.

[11] *Batson*, supra, 476 U. S. at 91.

[12] (Citations and punctuation omitted.) Id. at 93.

[13] Id. at 96.

[14] Id. at 97.

venire.[15] Because of Horton's choice, we focus on percentages in evaluating whether he met the prima facie threshold.

Horton's sole evidence was that the State used 33 percent of its strikes to remove members of his race from the 34 person venire which contained 18 percent of his race. Had the State used only one of its strikes (seventeen percent) in this manner, Horton indisputably would have shown no prima facie case. It is the State's use of an additional strike on which Horton rests his claim of purposeful race discrimination. Where the State uses less than 50 percent of its allotted strikes against members of a race, and more than 50 percent of such persons on the venire remain, the variance of one strike from strict percentage calculations does not alone constitute prima facie purposeful racial discrimination. "It did not result in the total or even the disproportionate exclusion of black venire on account of their race, nor is this single strike such an overwhelming application of peremptory challenges as to authorize the inference of intentional racial discrimination."[16]

The 15-point differential between the percentage of such jurors in the venire (18 percent) and the percentage of peremptory strikes used against them (33 percent) does not approach the differential found in cases where a prima facie case has been established.[17] Since Horton presented no other relevant circumstances in support of his claim, and we find none, the trial court correctly held he failed to make a prima facie case of discrimination under *Batson*.[18]

2. The court explained to the jury, after reading the indictment, that the named co-indictee "has previously [pled] guilty and been sentenced by this Court and therefore you are not required to reach any verdict as it relates to him. The only person on trial before you today is Vershorn Horton." Horton contends this violated OCGA § 17-8-57 by improperly intimating he was guilty.

Horton did not object to this comment in the trial court nor move for a mistrial on this basis. Horton is estopped from raising the issue on appeal because he failed to preserve it.[19]

---

[15] Id. at 93; see *Cantrell v. State*, 217 Ga. App. 641, 643 (3) (459 SE2d 564) (1995).

[16] *Cantrell*, supra, 217 Ga. App. at 643 (3).

[17] See *Smith v. State*, 263 Ga. 224, 226 (4) (430 SE2d 579) (1993) (67-point differential — State used 100% of its strikes against blacks from a venire that was 33% black); *Davis v. State*, 263 Ga. 5, 7 (10) (426 SE2d 844) (1993) (37-point differential — State used 80% of its strikes against blacks from venire that was 43% black); *Griffeth*, supra, 224 Ga. App. at 464 (2) (30-point differential — State used 50% percent of its allotted strikes against blacks in selecting from a venire that was 20% black); *Staples v. State*, 209 Ga. App. 802 (1) (434 SE2d 757) (1993) (31-point differential — State used 50% of its strikes against blacks from venire that was 19% black).

[18] See *Brown v. State*, 261 Ga. 184, 185 (3) (402 SE2d 725) (1991).

[19] *Garrett v. State*, 173 Ga. App. 292 (1) (325 SE2d 911) (1985); see *Freeland v. State*, 223 Ga. App. 326, 327 (2) (477 SE2d 633) (1996) ("[i]ssues presented for the first time on appeal

3. Horton claims he was denied effective assistance when his counsel failed to move for a mistrial at the time the court mentioned the guilty plea and sentence. But Horton can show no harm from the comment of the court. In its final charge, the court instructed the jury that "[b]y no ruling or comment which the Court has made during the progress of this trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant." Furthermore, without objection two witnesses, including the co-indictee himself, testified that he was serving a sentence for his role in the robbery. Because the co-indictee was subject to cross-examination, harm if any from the court's comment was cured[20] and gave no grounds for a mistrial. Moreover, neither in the pleadings nor at the hearing on his amended motion for new trial did Horton's new counsel raise the failure to object to these comments of the court as specific grounds for finding ineffective assistance, and thus this argument has been waived.[21]

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 21, 1998.

*Patricia F. Angeli*, for appellant.
*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.

---

furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court") (citation and punctuation omitted).

[20] *Cantrell v. State*, 201 Ga. App. 184 (410 SE2d 208) (1991); see *Barnes v. State*, 269 Ga. 345, 354 (15) (496 SE2d 674) (1998); cf. OCGA § 24-3-52.

[21] See *Keanum v. State*, 212 Ga. App. 662, 663 (1) (442 SE2d 790) (1994) (specific grounds for ineffective assistance not raised in pleadings or at hearing are waived).