## S01A1827. MITCHELL v. THE STATE.
(561 SE2d 803)

BENHAM, Justice.

Idris Antwjuan Mitchell brings this appeal from his conviction for malice murder, two counts of aggravated assault with intent to rob, two counts of aggravated assault with a deadly weapon, two counts of possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.[1]

1. The evidence at trial established that Mitchell and co-defendant Johnson planned to rob a bootlegger, but when they arrived at the bootlegger's apartment complex, he was not there, so they decided to rob a taxi they saw leaving. At Johnson's direction, the driver of their car blocked the taxi. Johnson got into the backseat with the passenger and held a 9 mm pistol to his head while Mitchell pointed a .357 revolver at the taxi driver. Confusion arose and Mitchell fired two shots, one of which killed the taxi driver, then returned to the car in which he arrived, firing twice more at the passenger in the taxi. Mitchell and Johnson then left in the car in which they arrived. Both guns were thrown from the car just outside the apartment complex and were recovered by the police. Parts of three bullets

---

[1] The shooting occurred on April 30, 2000, and Mitchell was indicted on December 20, 2000, for malice murder, two counts of felony murder (aggravated assault with a deadly weapon, aggravated assault with intent to rob), five counts of aggravated assault (three with a deadly weapon, two with intent to rob), two counts of possession of a firearm during commission of a crime (two different pistols), and possession of a firearm by a convicted felon. Mitchell was convicted of all charges at a jury trial conducted March 12-14, 2001, and the trial court sentenced him to life imprisonment for malice murder (the two felony murder counts and the aggravated assault with a deadly weapon against the murder victim were vacated by operation of law), to consecutive terms of 20 years each for the remaining counts of aggravated assault, to five year terms for each count of possession of a firearm during commission of a crime (concurrent with each other, but consecutive to the other terms), and to a consecutive term of five years for the offense of possession of a firearm by a convicted felon. Pursuant to a notice of appeal filed March 15, 2001, the record was transmitted to this Court and the appeal was docketed on September 5, 2001. The appeal was submitted for decision on the briefs.

found at the scene were identified as coming from the .357 revolver, which had four shell casings in it when recovered. After the jury returned its verdict on the other counts, the State presented evidence of Mitchell's previous conviction for the felony of entering an automobile, and the jury found him guilty of possession of a firearm by a convicted felon.

The evidence set out above was sufficient to authorize a rational trier of fact to find Mitchell guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993), Mitchell contends that the trial court erred in failing to merge one of the aggravated assault counts into the felony murder count which specified that aggravated assault as its underlying felony. However, that argument is directly contrary to the holding in *Malcolm*. This Court held there that when a defendant is convicted of malice murder and felony murder of the same victim, and of the separately charged felony which underlay the felony murder count, the felony murder count is vacated by operation of OCGA § 16-1-7, and the defendant may be sentenced for the felony conviction which would have been merged into that felony murder count so long as the felony is not included in the murder as a matter of fact or law. In the present case, the indictment included two counts alleging aggravated assault of the murder victim, one with a deadly weapon and one with intent to rob. The trial court merged the aggravated assault count which alleged use of a deadly weapon into the malice murder conviction.

To determine whether the offense of aggravated assault with intent to rob the taxi driver is included in the murder of the taxi driver, we use the "actual evidence" test: " ' "[I]f the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under . . . OCGA § 16-1-6 (1)." ' [Cits.]" *Montes v. State*, 262 Ga. 473 (1) (421 SE2d 710) (1992). Here, the evidence showing Mitchell's intent to rob the driver was not used in proving the murder, and the evidence that Mitchell shot the driver was not used to prove the aggravated assault. Thus, under the "actual evidence" test, neither offense was included in the other and there was no merger. See also *Griffin v. State*, 257 Ga. 148 (6) (356 SE2d 209) (1987). Accordingly, the trial court did not err in failing to merge the aggravated assault with intent to rob conviction with the murder conviction.

3. In cross-examining the State's firearm examiner, defense counsel asked whether the witness had testified on direct examination that three bullets were fired from the .357 revolver, or four. The witness testified that three bullets fired by that gun were recovered

from this crime scene and that one bullet fired by that gun was recovered from a different murder scene several months prior to the one involved in this case. Defense counsel complained that the jury might get the idea that Mitchell was involved in a different crime, and moved for a mistrial. The trial court denied the motion and refused to give curative instructions. Mitchell contends on appeal that the trial court abused its discretion in denying his motion for mistrial and his request for curative instructions.

Contrary to the State's arguments on this issue, the witness's testimony that the gun had been used in another case was not responsive to the question and was not induced by the defense. However, viewed in context, it is plain that the gratuitous reference to a different crime did not implicate Mitchell in that crime. Unrefuted testimony had previously established that Mitchell had come into possession of the murder weapon only on the night of the shooting. Since the gratuitous testimony did not put Mitchell's character in issue, the trial court did not abuse its discretion in denying the motion for mistrial. *Eagle v. State*, 264 Ga. 1 (2) (440 SE2d 2) (1994). While the better course for the trial court would have been to instruct the jury to disregard the unresponsive answer (see *Gardner v. State*, 273 Ga. 809 (5) (546 SE2d 490) (2001)), we do not find the trial court's refusal in this case, where the gratuitous testimony was not directly prejudicial, to be a manifest abuse of discretion. Accordingly, we hold that the trial court's denial of the motion for mistrial and refusal to give appropriate curative instructions do not require reversal of Mitchell's conviction.

4. During a colloquy between the trial court and defense counsel regarding the State's failure to provide the defense with information which would have enabled the defense to determine whether a witness had a criminal record, the trial court pointed out to counsel that when the witness pleaded guilty in defense counsel's presence only minutes before, it had been established that she had no criminal record. Defense counsel moved for a mistrial on the ground that the trial court had bolstered the witness's credibility in front of the jury in violation of OCGA § 17-8-57. The trial court denied the motion.

Mitchell's enumeration of error complaining that the trial court improperly bolstered the witness's credibility by expressing an opinion on that credibility is without merit: "While a court may not express an opinion as to what has or has not been proven, OCGA § 17-8-57, remarks made by the court regarding the admissibility of evidence or explaining the court's rulings are not such a comment or opinion. [Cits.]" *Russell v. State*, 184 Ga. App. 657 (2) (362 SE2d 392) (1987).

5. Following voir dire, Mitchell challenged the State's use of peremptory strikes against African-American venirepersons, citing *Bat-*

*son v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The trial court overruled the challenge, finding that the defense had not made a prima facie showing of racial discrimination. Mitchell enumerates that ruling as error.

When asked to make a prima facie case of racial discrimination, defense counsel noted only that the State had used four strikes to remove African-Americans from the jury. The same argument was held in *Livingston v. State*, 271 Ga. 714, 718 (2) (524 SE2d 222) (1999), not to make out a prima facie case of discrimination.

> The challenging party makes out a prima facie case of purposeful discrimination by showing that " 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.' (Cits.)" [Cit.] Even though "circumstantial evidence of invidious intent may include proof of disproportionate impact," numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent.

Id.

> Beyond showing that jurors of a particular race were stricken, "defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." [Cit.] *Batson* outlined various avenues available to make such a showing. "For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose."

*Horton v. State*, 234 Ga. App. 478 (1) (507 SE2d 221) (1998). Since the defense could point to nothing but the raw number of strikes used, and could not show a discriminatory pattern or anything occurring during voir dire that might give rise to an inference of discrimination, we conclude that the trial court did not err in ruling that Mitchell had not made out a prima facie case of discrimination.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 28, 2002.

*Lloyd J. Matthews*, for appellant.

*Robert E. Keller, District Attorney, Jack S. Jennings, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.