## A02A1974. GRAY v. THE STATE.
### (581 SE2d 279)

PHIPPS, Judge.

A grand jury indicted Samuel Gray on five counts of burglary. After a trial, a Houston County jury found him guilty of burglarizing the homes of Mike Smith and Dora Lee Parkerson, guilty of theft by taking from the residence of Ann Watson, and not guilty of two other burglaries. On appeal, Gray contends that the trial court erred in (1) denying his motion for directed verdict based on the insufficiency of the evidence, (2) admitting similar transaction evidence of his 1988 guilty pleas to five counts of theft by receiving, (3) holding that he had failed to make a prima facie case for his *Batson* challenge, and (4) failing to suppress evidence collected at the home of his girlfriend. Finding no error, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence shows that on November 29, 1990, police searched the residence of Gray's girlfriend, Shelia Richardson, with her permission. In a closet in the bedroom which Gray had shared with Richardson, they found a bag holding several pieces of jewelry, a lighter, a flashlight, a pair of overalls, and other items.

Smith and Parkerson testified that their homes had been burglarized on December 7, 1989, and October 30, 1990, respectively. Smith identified a pair of earrings taken from his house. Sergeant Mickey Deese of the Houston County Sheriff's Department testified that the earrings were found in Richardson's home, and Richardson testified that Gray had given them to her. Parkerson identified jewelry stolen from her house, and Sergeant Deese testified that the jewelry Parkerson identified had been recovered from the bag in the closet of Richardson's bedroom.

Several items were stolen from Watson's home on September 17, 1990, including her husband's lighter, which police also found in the bag at the Richardson residence. The State introduced evidence in connection with the burglary of the homes of Ted Shubert and Dave Milam, but Gray was acquitted of those charges.

The Smith, Parkerson, and Watson residences were contiguous to a large tract of wooded land, some of which was leased to a deer hunting club. Shane Ray testified that, while hunting on club land in

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[2] Id.; see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

the fall of 1990, he had seen Gray, who did not have permission to be in the area. Ray yelled at Gray and asked him what he was doing there, but Gray did not respond and walked away.

1. The evidence was sufficient to support Gray's burglary convictions and his theft by taking conviction under the standard of *Jackson v. Virginia*.[3] Gray was shown to be in recent and unexplained possession of property which had been stolen from the Smith, Parkerson, and Watson homes.

> Recent unexplained possession is probative evidence which must be reviewed along with other evidence in the case to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt.[4]

The burglarized homes were adjacent to and accessible on foot from the wooded area where Gray was seen around the time the crimes occurred. Similar transaction evidence showed that Gray had previously received items stolen from homes in the area, including the Smith residence. The trial court did not err in overruling Gray's motion for a directed verdict.

2. (a) Gray contends that the trial court erred in admitting evidence of his guilty pleas to five counts of theft by receiving stolen property because the evidence was unduly prejudicial and exceeded the scope of allowable similar transaction evidence. We disagree.

> To render evidence of another crime admissible, two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. Additionally, the court is required to find that the evidence will be introduced for an appropriate purpose and not to raise an improper inference as to the accused's character. After these criteria are met, the trial court retains the sound legal discretion to exclude relevant similar crimes evidence on the ground that its probative value is substantially outweighed by the danger of unfair prejudice. The exercise of this discretion requires that the court consider whether the State's need for the similar transaction evidence outweighs the prejudice inherent to the defendant. This consideration consists of at least two questions. First, is the issue for

---

[3] Supra.
[4] *Slater v. State*, 209 Ga. App. 723-724 (1) (434 SE2d 547) (1993).

which the State is introducing the evidence a genuinely disputed issue? . . . Second, does the State need this evidence to prove the issue, or can the fact be proved otherwise?[5]

In 1988, Gray pled guilty to 28 counts of theft by receiving stolen property. The State introduced evidence of five of these crimes as similar transactions, all involving property taken from homes. Although the earlier crimes involved theft by receiving, a similar transaction does not need to be identical to the crime charged to be admissible so long as there is a logical connection.[6] Here, the similar transaction evidence showed a connection between Gray and the crimes charged in the indictment. Three of the prior transactions involved property stolen from residences which Gray was charged with burglarizing in this case.[7] Another prior transaction involved property stolen from a home bordering the wooded area which allowed access to the residences where the charged burglaries occurred. The victim of a 1986 burglary identified his stolen class ring, which had been found in the bag in Richardson's closet. Gray had previously pled guilty to theft by receiving property taken from the victim's home, and this crime was the fifth similar transaction admitted into evidence.

The trial court was authorized to conclude that the probative value of the similar transaction evidence outweighed the risk of unfair prejudice to Gray and did not abuse its discretion in allowing the similar transactions into evidence.

(b) Gray also complains that the prosecutor, in questioning the witnesses called to prove the similar transactions, referred to those incidents as burglaries, as opposed to thefts by receiving and so misled the jury. Gray argues that the prosecutor's distortion of the truth caused the similar transaction evidence to be unfairly prejudicial. We disagree. The witnesses' homes clearly were burglarized so the prosecutor did not distort the evidence. In any case, Gray's attorney made no objection to the prosecution's questioning of the similar transaction witnesses and thus no error was preserved for appeal.[8] Furthermore, the jury was informed about Gray's pleas of theft by receiving, and the trial court instructed them on the proper consideration of similar transaction evidence.

(c) Gray further complains that the prosecutor misused the similar transaction evidence by arguing to the jury that he had been to

---

[5] (Citations, punctuation, footnotes and emphasis omitted.) *Grant v. State*, 248 Ga. App. 203, 205 (2) (546 SE2d 339) (2001).

[6] *Jones v. State*, 255 Ga. App. 609, 610 (565 SE2d 915) (2002).

[7] These included the Smith, Shubert, and Milam residences, although Gray was found not guilty of the burglary charges involving the Shubert and Milam homes.

[8] See generally *Chesser v. State*, 228 Ga. App. 164, 165 (1) (a) (491 SE2d 213) (2000).

the homes from which he had admitted receiving stolen property. Our review of the closing argument shows no improper conduct by the prosecution. Counsel in closing argument is entitled to draw inferences from the evidence.[9]

3. Gray next claims that the trial court erred in holding that he failed to make a prima facie case for his *Batson* challenge. We disagree.

> Under the initial prong of *Batson*, the defendant has the burden to establish a prima facie case of racial discrimination as a result of the state's use of its strikes. To do so, [Gray] was required to show that [he] is black; that the prosecutor exercised peremptory strikes to remove blacks from the petit jury, and that these facts and other relevant circumstances, including relevant statistical data as to the racial composition of the petit jury panel, the strikes exercised by both parties, and the racial composition of the resulting jury, raise an inference that the prosecutor struck blacks from the petit jury on the basis of race.[10]

A trial court's findings with regard to a *Batson* motion are entitled to great deference and will be accepted unless clearly erroneous.[11] Gray argues that the State improperly used its peremptory strikes because he is an African-American and the State used eight of its ten peremptory strikes against African-American venirepersons.

> The challenging party makes out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Even though circumstantial evidence of invidious intent may include proof of disproportionate impact, numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent.[12]

Gray shows that 80 percent of the State's strikes were used to exclude African-American jurors. But his arguments here and before the trial court were limited to this showing of disproportionate exercise of strikes, and he has not otherwise shown "a discriminatory pat-

---

[9] *Payne v. State*, 273 Ga. 317, 318 (4) (540 SE2d 191) (2001).

[10] (Citations and punctuation omitted.) *Smith v. State*, 231 Ga. App. 677, 683-684 (5) (499 SE2d 663) (1998).

[11] *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).

[12] (Punctuation omitted.) *Mitchell v. State*, 275 Ga. 42, 45 (5) (561 SE2d 803) (2002).

tern or anything occurring during voir dire that might give rise to an inference of discrimination."[13] In response, the State showed that the percentage of African-American jurors seated was greater than the percentage of African-Americans in the jury pool.[14] As was the case in *Livingston v. State*,[15] the trial court allowed the prosecutor to perfect the record by presenting its reasons for striking each African-American venireperson. The explanations given were race-neutral and were not contested by Gray.[16]

Considering the information available to us, we cannot say that Gray has shown that the trial court was clearly erroneous in its rejection of his *Batson* challenge.

4. Finally, Gray claims that the trial court erred in failing to suppress the evidence found at Richardson's home. We again disagree.

When reviewing a trial court's decision on a motion to suppress, we must ensure that there was a substantial basis for it.[17] "The burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of privacy in the premises searched."[18]

The police searched Richardson's home with her express permission and found Gray's bag in a closet. They searched its contents without a warrant or Gray's permission. Gray argues that he retained an expectation of privacy in the contents of the bag. "Personal belongings brought by their owner on a visit to a friend's house retain their constitutional protection until their owner meaningfully abdicates control or responsibility."[19]

The evidence did not show that Gray had a key to the residence, was renting a room, or had any right to exclude others from the residence. He stayed with Richardson intermittently, but at the time of the search had left her residence after she told him he was not welcome. He did not take the bag with him when he left. Accordingly, the bag differs from property claimed by a guest while visiting another's residence.[20] We conclude that Gray had no reasonable expectation of privacy in the contents of the bag because he had abandoned the bag in Richardson's residence. He cannot claim the

---

[13] Id.

[14] The record indicates that four of the twelve final jurors were African-American, while thirteen of the forty-two venirepersons were African-American. See generally *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987). The voir dire transcript is not part of the record, and we rely on the representations made by counsel in their arguments before the trial court.

[15] 271 Ga. 714, 718-719 (2) (524 SE2d 222) (1999).

[16] See also *Jones v. State*, 246 Ga. App. 596, 597 (1) (539 SE2d 602) (2000).

[17] See *Johnson v. State*, 246 Ga. App. 197, 198 (1) (540 SE2d 212) (2000).

[18] *In the Interest of M. H.*, 247 Ga. App. 84, 85 (543 SE2d 390) (2000).

[19] *State v. Browning*, 209 Ga. App. 197, 198 (1) (433 SE2d 119) (1993).

[20] Compare id.

protection of the Fourth Amendment in connection with its search by police.[21]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 3, 2003 —
RECONSIDERATION DENIED MARCH 13, 2003 — 

*Nicholas E. White*, for appellant.

*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney*, for appellee.

---

[21] See *Osment v. State*, 256 Ga. App. 591, 592-593 (569 SE2d 262) (2002) (defendant had no expectation of privacy in a bag stored under a bed in a trailer he did not own or rent).