S11A0348. WATKINS v. THE STATE.
(711 SE2d 655)

NAHMIAS, Justice.

Robert Watkins appeals from his convictions and sentences for the malice murder of Yan Sing Ku, the aggravated assault of Guadalupe Parilla, conspiracy to commit armed robbery, and possession of a firearm during the commission of a crime.[1] We affirm.

---

[1] The crimes occurred on April 21, 2006. On July 6, 2006, a Cobb County grand jury indicted Watkins and five co-defendants for the malice murder, felony murder (two counts), and aggravated assault of Yan, for the aggravated assault of Parilla, for conspiracy to commit armed robbery, and for the possession of a firearm during the commission of a crime. After a joint trial, a jury found Watkins guilty on all counts on April 25, 2007. The trial court sentenced Watkins to life in prison for the malice murder conviction and to consecutive terms of years in prison for the conspiracy, aggravated assault of Parilla, and firearm convictions. The felony murder convictions were vacated as a matter of law, and the court merged the conviction for

1. The evidence at trial, viewed in the light most favorable to the verdict, showed that at 10:45 p.m. on April 21, 2006, Watkins, Colton Williams, Marcus Brown, Terrance Coleman, Maya Keating, and Christina Pascarella parked outside the China Wok restaurant on Delk Road. At Watkins' direction, Pascarella and Keating went inside the restaurant to see how many people were there. They saw no other customers, and after purchasing a drink, they returned to the car and told Watkins. Armed with handguns, Watkins and Williams then went through the back door of the restaurant into the kitchen, where they encountered Parilla, who worked as a cook. One of the robbers demanded money from Parilla, who said he did not have any. Yan, who was also a cook, then walked into the kitchen and was immediately shot by the other robber. The robber who initially demanded money from Parilla demanded money again, and when Parilla again said he did not have any, the man shot him. Yan died from his injuries; Parilla, who was shot in the arm, survived.

When Watkins and Williams arrived back at the car, Watkins told the group that he thought he had killed someone and that "if anybody told anybody about what had happened that he would kill them all and kill their family." After the shooting, Brown called his mother, Marlynn Mays, asking for help. Brown said he was with Watkins and told his mother that he was in trouble and that she needed to watch the news. After Ms. Mays saw that there had been a shooting, she called her son, who said that he and his co-defendants were "riding around" looking for drugs. Brown told his mother that Watkins and Williams went into a building and that he heard two gunshots. When Watkins returned, he told Brown that "he thought he killed somebody." Brown later told his mother that Watkins and Williams "went in and robbed the China Wok and killed somebody." Ms. Mays contacted the police.

In a statement to the police, Watkins admitted that he entered the restaurant with a .25 caliber handgun to rob it, but he claimed that he "heard gunshots and left the restaurant." Williams gave a similar statement to the police.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Watkins guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for

---

the aggravated assault of Yan into the malice murder conviction. On May 4, 2007, Watkins filed a motion for new trial, which he amended on April 10, 2008. The trial court denied the motion on September 4, 2009, and Watkins filed a timely notice of appeal. The case was docketed to the January 2011 term of this Court and was submitted for decision on the briefs.

the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. (a) Watkins contends that the State engaged in unconstitutional gender-based discrimination by using seven of its eight peremptory strikes against women. See *J. E. B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994).[2] "The challenging party makes out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Livingston v. State*, 271 Ga. 714, 718 (524 SE2d 222) (1999) (citations and punctuation omitted). Here, the record shows that the jury consisted of ten women (83%), that the percentage of women on the jury was 15% higher than the percentage of possible female jurors from which the jury was chosen (19 of the 28 potential jurors who were subject to peremptory strikes were women), and that the prosecutor accepted about 60% of the potential female jurors. See 6 LaFave, Israel, King & Kerr, Criminal Procedure, § 22.3 (d), pp. 136-137 (3rd ed. 2007) (citing cases discussing these factors as relevant to a trial court's determination of whether a prima facie case of discrimination has been established). Moreover, the prosecutor had four strikes remaining when the panel of 12 jurors was accepted, and the list of prospective jurors indicates that, had the prosecutor used those four strikes against women, the result would have been a jury with eight instead of ten women. Considering all of the relevant facts, we conclude that the trial court did not abuse its discretion in ruling that Watkins failed to establish a prima facie case of discriminatory purpose based on gender. See *United States v. Martinez*, 621 F3d 101, 109-110 (2d Cir. 2010) (explaining why abuse of discretion is the appropriate standard of review for a trial court's ruling on whether a prima facie case of discrimination was shown).

(b) Watkins also contends that the State engaged in unconstitutional race-based discrimination by using three of its eight peremptory strikes against African-Americans. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The trial court required the State to present race-neutral reasons for striking these jurors. See id. at 97. The record supports the trial court's finding that the reasons offered for the three strikes were race neutral and not pretextual. See *Ledford v. State*, 289 Ga. 70, 82-83 (709 SE2d 239) (2011). We therefore affirm the court's denial of the *Batson* motion.

---

[2] We reject the State's assertion that Watkins is procedurally barred from raising these jury selection issues on appeal. The record shows that Watkins joined in a co-defendant's motion challenging the State's peremptory strikes.

See id.

3. Watkins raises three claims of ineffective assistance of trial counsel. To prevail on these claims, Watkins

> must show that his trial counsel provided deficient perfor-
> mance and that, but for that unprofessional performance,
> there is a reasonable probability that the outcome of the
> proceeding would have been different. See *Strickland v.
> Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d
> 674) (1984). In examining an ineffectiveness claim, a court
> need not "address both components of the inquiry if the
> defendant makes an insufficient showing on one. In particu-
> lar, a court need not determine whether counsel's perfor-
> mance was deficient before examining the prejudice suffered
> by the defendant as a result of the alleged deficiencies." Id. at
> 697.

*Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010).

(a) Watkins first argues that trial counsel was ineffective because she failed to elicit sufficient testimony from his expert at the *Jackson-Denno* hearing about his mental abilities and condition when he made his statement to the police, thereby failing to adequately support his claim that he did not knowingly and volun-tarily waive his *Miranda* rights.[3] However, to demonstrate prejudice from trial counsel's alleged failure to elicit favorable testimony at trial, "the defendant may not rely on hearsay or speculation but must either call the witness or 'introduce a legally recognized substitute for the uncalled witness's testimony.' " *Bell v. State*, 287 Ga. 670, 675 (697 SE2d 793) (2010) (quoting *Dickens v. State*, 280 Ga. 320, 322-323 (627 SE2d 587) (2006)). Because Watkins failed to offer such proof at the motion for new trial hearing, he failed to demonstrate prejudice and his claim was properly denied.

(b) Watkins next contends that trial counsel was ineffective in failing to move for a mistrial or request a curative instruction when the State showed the jury two photographs of the murder victim's body at the crime scene, which the trial court had previously ordered the State not to show on the ground that they were duplicative of other photographs. However, given that the two photographs did not show the jury more than other crime scene photographs, and given the strength of the evidence against Watkins, he has failed to show that, even if trial counsel had moved for a mistrial or requested a curative instruction, there is a reasonable probability that the trial

---

[3] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964); *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

court would have granted a mistrial or that the outcome of the trial otherwise would have been different. See *Allen v. State*, 277 Ga. 502, 503 (591 SE2d 784) (2004).

(c) Watkins also contends that trial counsel provided ineffective assistance when she failed to object to the State reviewing his expert's notes at the *Jackson-Denno* hearing. However, trial counsel gave a reasonable strategic explanation for that decision — that there was nothing detrimental to Watkins in the notes. See *Johnson v. State*, 286 Ga. 787, 791 (692 SE2d 575) (2010) (holding that reasonable trial tactics do not amount to ineffective assistance of counsel). In addition, Watkins did not demonstrate that, even if trial counsel had objected, there is a reasonable probability that the result of the *Jackson-Denno* hearing would have been different.

4. Watkins contends that the trial court erred in denying his motion to suppress his statement to the police because the State failed to show that he made a knowing and voluntary waiver of his *Miranda* rights. We disagree. "The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances." *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008). On appeal, " 'we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.' " Id. at 177 (citation omitted).

At the *Jackson-Denno* hearing, Watkins' expert witness testified that Watkins said that he used ecstasy on a regular basis and that he had used alcohol, ecstasy, and marijuana on the day of the crimes. The expert also testified that he watched the videotape of Watkins' police interview, that Watkins' behavior was consistent with being high on ecstasy, and that, in his opinion, Watkins was impaired at the time to the extent he could not make a knowing and intelligent waiver of his rights. However, the detective who interviewed Watkins testified that Watkins said that he was not under the influence of alcohol or drugs, that the detective had experience in dealing with people under the influence of alcohol or drugs, that he saw no evidence that Watkins was under the influence of alcohol or drugs, that Watkins had no difficulty speaking or communicating, that the detective read Watkins his *Miranda* rights, and that Watkins said he understood each of these rights.

Under these circumstances, the trial court did not err in concluding that Watkins made a knowing and voluntary waiver of his *Miranda* rights. See *Krause v. State*, 286 Ga. 745, 751 (691 SE2d 211) (2010) (affirming the denial of a motion to suppress because there was evidence that the defendant "did not appear to be under the influence of any intoxicants, appeared to be speaking freely and voluntarily, and was responsive to all questions," even though there

was also evidence that he had been drinking before his police interview and was fatigued); *Philmore v. State*, 263 Ga. 67, 68 (428 SE2d 329) (1993) (holding that, even assuming the defendant had used crack cocaine an hour before his police interview and was still under the drug's influence, the trial court did not err in ruling that he gave a voluntary statement and knowingly and intelligently waived his rights).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 13, 2011.

*Angela Z. Brown*, for appellant.

*Patrick H. Head*, District Attorney, *Jesse D. Evans, Amelia G. Pray*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Sheila E. Gallow*, Assistant Attorney General, for appellee.

