## S12A1138. BROWN v. THE STATE.
(734 SE2d 41)

BLACKWELL, Justice.

Thomas Antonio Brown was tried by a Richmond County jury and convicted of the murder of Bon Joshwa Albright, as well as four counts of aggravated assault and five counts of possession of a firearm during the commission of a crime. Following the denial of his motion for new trial, Brown appeals, contending that the evidence is insufficient to sustain his convictions, that the court below erred when it denied his *Batson*[1] objection to the way in which the State exercised its peremptory strikes in the selection of the jury, and that the court erred when it sustained an objection to the closing argument offered by his lawyer. Upon our review of the briefs and the record, we find no error, and we affirm.[2]

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[2] The events that form the basis for the convictions occurred on July 27, 2006. Brown was indicted on August 22, 2006 and charged with one count of malice murder, one count of felony murder, five counts of aggravated assault, and six counts of possession of a firearm during the commission of a crime. Prior to trial, one count of aggravated assault and one count of possession of a firearm during the commission of a crime were dismissed as nolle prosequi. The trial on the remaining counts commenced on May 22, 2007, and the jury returned its verdict on May 24, 2007, finding Brown guilty on all the remaining counts. The felony murder conviction was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993), and Brown was sentenced to imprisonment for life for malice murder, imprisonment for terms of twenty years for each of the aggravated assaults (concurrent with one another and with the life sentence), and imprisonment for terms of five years for each count of possession of a

1. Viewed in the light most favorable to the prosecution, the evidence shows that shots were fired as Brown was walking in the Harrisburg neighborhood of Augusta on July 27, 2006. Someone told Brown that Pernell ("P.J.") Graham had fired the shots and had fired them at Brown, and Brown reported the incident to a police officer. Brown then went home, where he was overheard talking on the telephone, saying that he was "going to kill those n****** for shooting at him," and that he wanted to be picked up by "the Intrepid." Soon thereafter, Mark Dewayne Graham and Damien Jacquez Hawes arrived in a Dodge Intrepid and picked up Brown.

Mark Graham, Hawes, and Brown drove to the home of a relative of P.J. Graham. There, they found at least five people on the front porch, including P.J. and Albright. As the Intrepid drove past the home, Brown asked from the back seat whether P.J. had shot at him. When P.J. replied that he had not, Brown said, "one of you punk a** n****** shot at me." The Intrepid continued past the home, and Brown was overheard telling Mark Graham, "yeah, that's P.J." Witnesses then saw the Intrepid turn around and approach the home for a second time. As the Intrepid again drove past the home, Mark Graham fired a single shot from a .380-caliber handgun. The shot struck Albright, who was standing next to P.J., and Albright was killed.

On appeal, Brown claims that no evidence shows that he was a party to the firing of the fatal shot. We disagree. A person is a party to a crime if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (4). "While mere presence at the scene and approval of a crime not amounting to encouragement is insufficient to authorize conviction as a party to a crime . . . criminal intent may be inferred from conduct before, during, and after the commission of the crime." *Simpson v. State*, 265 Ga. 665, 665-666 (461 SE2d 210) (1995) (citation and punctuation omitted). Here, one reasonably might infer from the evidence concerning the conduct of Brown before and at the time of the shooting that he advised, encouraged, and counseled Mark Graham to fire the fatal shot. See, e.g., *Simmons v. State*, 289 Ga. 773, 774-775 (1) (b) (716 SE2d 165) (2011); *Metz v. State*, 284 Ga. 614, 615

firearm during the commission of a crime (concurrent with one another but consecutive to the life sentence). Brown filed his motion for new trial on June 25, 2007, amended it on August 21, 2007, and amended it again on August 27, 2010. The court below denied the motion for new trial as amended on February 14, 2011. Brown moved on May 12, 2011 for an out-of-time appeal, and the court below granted that motion on July 1, 2011. Brown timely filed his notice of appeal on July 29, 2011, and the case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

(1) (669 SE2d 121) (2008). Consequently, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Brown was a party to the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

2. After the jury was selected, Brown objected that the State had used its peremptory strikes to unconstitutionally strike four black prospective jurors on the basis of their race. See *Batson*, 476 U. S. at 86 (II) (A). In support of this objection, however, Brown pointed to nothing more than the strikes themselves. The court below found that Brown had failed to make out a prima facie case of purposeful discrimination on the basis of race, and based on that finding, the court overruled his objection. We review such a finding only for abuse of discretion, *Watkins v. State*, 289 Ga. 359, 361 (2) (a) (711 SE2d 655) (2011), and we see no abuse of discretion in this case.

As we have explained before, when one party objects that another has unconstitutionally discriminated on the basis of race in its use of peremptory strikes, the objecting party bears the burden of making out a prima facie case of purposeful discrimination. *Blackshear v. State*, 285 Ga. 619, 620 (3) (680 SE2d 850) (2009). To make out a prima facie case, the objecting party must show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Watkins*, 289 Ga. at 361 (2) (a) (citation and punctuation omitted). It is not enough for the objecting party to note that prospective jurors of a certain race were struck by the other party. In addition, the objecting party must show that there are good reasons to think that those prospective jurors were stricken "*on account of* their race." *Mitchell v. State*, 275 Ga. 42, 45 (5) (561 SE2d 803) (2002) (citation omitted; emphasis supplied). We previously have cautioned that,

> [e]ven though circumstantial evidence of invidious intent may include proof of disproportionate impact, numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent.

*Livingston v. State*, 271 Ga. 714, 718 (2) (524 SE2d 222) (1999) (citation and punctuation omitted). See also *Stewart v. State*, 277 Ga. 768, 770 (4) (596 SE2d 143) (2004); *Mitchell*, 275 Ga. at 45 (5); *Whitaker v. State*, 269 Ga. 462, 464 (3) (499 SE2d 888) (1998).

In this case, the State apparently used only five of its nine allotted peremptory strikes, and it used four of those strikes (44 percent of its allotted strikes) to strike black jurors. Yet, black jurors represented 50 percent of the venire and 58 percent of the selected

jury. Viewed in this context, the mere fact that the State used four strikes to strike black jurors is not enough, we think, to raise an inference of purposeful discrimination. See *Horton v. State*, 234 Ga. App. 478, 481 (1) (507 SE2d 221) (1998) (when objecting party relies solely on raw numbers of strikes directed to jurors of a certain race, those numbers ordinarily make out a prima facie case only when a significant differential appears between percentage of strikes exercised against jurors of that race and percentage of venire composed of jurors of that race); see also *Watkins*, 289 Ga. at 361 (2) (a) (defendant failed to make out prima facie case of purposeful discrimination against women where State used seven of its eight strikes against women, but ten women served on the selected jury, and percentage of women on selected jury was higher than percentage of women in venire).[3] Indeed, with four strikes unused, the State passed on the opportunity to strike seven black jurors that ultimately were selected to serve on the jury. See *Central Alabama Fair Housing Center v. Lowder Realty Co.*, 236 F3d 629, 638 (III) (A) (11th Cir. 2000) ("[T]he unchallenged presence of jurors of a particular race on a jury substantially weakens the basis for a prima facie case of discrimination in the peremptory striking of jurors of that race."); see also *Watkins*, 289 Ga. at 361 (2) (a) (noting that prosecuting attorney "accepted about 60 [percent] of the potential female jurors"). Insofar as Brown points to nothing other than the number of strikes used to strike black jurors,[4] we cannot say that the court below abused its discretion when it found that Brown failed to make out a prima facie case of purposeful discrimination on the basis of race.[5]

---

[3] Compare *Rose v. State*, 287 Ga. 238, 240 (2) (695 SE2d 261) (2010) (State made out prima facie case of purposeful discrimination where 100 percent of allotted strikes were used against white jurors, but white jurors comprised only 48 percent of venire); *Smith v. State*, 263 Ga. 224, 226 (4) (430 SE2d 579) (1993) (defendant made out prima facie case of purposeful discrimination where 100 percent of allotted strikes were used against black jurors, but black jurors comprised only 33 percent of venire); *Davis v. State*, 263 Ga. 5, 8 (10) (426 SE2d 844) (1993) (defendant made out prima facie case of purposeful discrimination where 80 percent of allotted strikes were used against black jurors, but black jurors comprised only 43 percent of venire).

[4] We have observed before that, among other things, "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Mitchell*, 275 Ga. at 45 (5). But in this case, no transcript of the voir dire or jury selection appears in the record. See *Howe v. State*, 250 Ga. 811, 814 (2) (301 SE2d 280) (1983) (when transcript "does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed at the trial court under the provisions of OCGA § 5-6-41 (f)"). And in any event, Brown does not argue in his briefs that anything said in voir dire or jury selection helps to make out a prima facie case.

[5] Brown also argues that the State unconstitutionally struck one Hispanic juror on the basis of his ethnicity, but we know nothing about how many Hispanic jurors were in the venire or the selected jury. Nor does Brown point to any other evidence of discriminatory purpose.

3. Finally, Brown contends that the court below erred when it sustained an objection to the closing argument of his lawyer. In closing, his lawyer made several comments about "gangs," and he seemed to say that Brown was a "[m]ember of a gang."[6] At that point, the prosecuting attorney objected that no evidence pointed to gang activity and that the repeated references to gangs misrepresented the record. The court agreed and sustained that objection. "[W]hile it is true that the permissible scope of closing argument is broad, it is not without limit. The trial court has the discretion to determine the range of proper closing argument." *Alexander v. State*, 285 Ga. 9, 10 (2) (673 SE2d 208) (2009) (citation and punctuation omitted). See also *Davis v. State*, 290 Ga. 757, 759 (3) (725 SE2d 280) (2012). Here, we see no abuse of discretion.

The record confirms the finding of the court below that no evidence pointed to gang activity. Brown notes that his lawyer asked the medical examiner on cross-examination whether he saw any gang-related marks upon the body of the victim, but the medical examiner replied that he observed no such marks. Brown also notes that the initial investigator who responded to the shooting was principally assigned to investigate gang activity, but the investigator explained at trial that he was en route to another incident when he overheard a radio dispatch about the shooting, and he decided to respond because he was nearby. The testimony of neither the medical examiner nor the initial investigator connected this case with gang activity. And in any event, it does not appear from the record that the State ever claimed at trial that the shooting was gang-related. We see no abuse of the considerable discretion afforded the trial court in its sustaining the objection to the repeated references to "gangs" in closing argument.[7]

*Judgment affirmed. All the Justices concur.*

---

Without more, that the State struck a single Hispanic juror is insufficient as a matter of law to make out a prima facie case of purposeful discrimination, and we need not consider that strike further.

[6] The lawyer said, "Antonio. Member of a gang." It is unclear from the transcript whether the lawyer was, in fact, arguing that Brown was a gang member, was suggesting that the prosecution or its witnesses considered Brown a gang member, or perhaps was sarcastically mocking the idea that Brown was a gang member.

[7] Brown also contends on appeal that the court below improperly sustained an objection to his lawyer arguing that the State had made out Brown to be an "animal." Although the State complained about the repeated references by Brown's lawyer to "animals" when it objected to the final reference to a "gang," it does not appear from the transcript that the court sustained any objection with respect to the use of the term "animals." In any event, sustaining such an objection would not have been an abuse of discretion, inasmuch as the State never argued that Brown was an "animal."

DECIDED NOVEMBER 5, 2012.

*Rahmaan A. Bowick, Katherine M. Mason*, for appellant.

*R. Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.