S11A0872. SIMMONS v. THE STATE.
(716 SE2d 165)

NAHMIAS, Justice.

Artez Simmons appeals his conviction for murdering Antoine Tolbert. He argues that the evidence was insufficient to support the verdict and that his trial counsel was ineffective in several ways. We affirm.

1. (a) The evidence at trial, viewed in the light most favorable to the verdict, showed the following.[1] On the evening of July 7, 2007, Brianna Jones hosted several people in her Fulton County apartment: her relatives, Appellant and co-indictee Jesse Watson; her

---

[1] The crime was committed on July 7, 2007. On July 22, 2008, Appellant was jointly indicted with Jesse Watson for malice murder, felony murder, and aggravated battery. He was tried separately, and the jury returned a guilty verdict on all counts on February 27, 2009. The trial court sentenced Appellant to life in prison for the malice murder conviction, with the felony murder conviction vacated by operation of law and the aggravated battery conviction merging. On March 10, 2009, Appellant filed a motion for a new trial, which he amended on September 15, 2010. After a hearing, the trial court denied the motion on January 27, 2011. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2011 term and orally argued on May 16, 2011.

girlfriend, Whitney Rainey; and the victim, who was a friend of Rainey's. After a night of drinking, Appellant, Watson, and the victim began to argue about whether a certain rap artist was broke. At some point, Appellant used the word "bitch" or "whore." Rainey responded that if Appellant did not want to be called a "bitch," he should not call women "whores." Appellant said that he and Watson should not be called "bitches." Rainey then called Watson one, and as she started to walk away, Watson punched her.

The victim then stood up and said, "It's not fixin' to go like that, man." Appellant punched him in the mouth, causing it to bleed. The victim told Appellant he did not want to fight, but Watson then began hitting him. Jones ordered everyone out of her apartment and led the way out the door, after which Rainey pulled the victim outside with her. On the way out, Watson punched the victim in the back of the head. He fell to the ground, and Watson then began kicking him repeatedly in the head. Rainey saw Jones unsuccessfully try to stop Watson, as Appellant stood nearby and encouraged Watson to "beat his ass." (Rainey later told the police that Appellant kicked the victim as well, although at trial she said she was mistaken on this point.) The victim lost consciousness. Jones went inside and called 911, telling the operator "they" had knocked the victim out. Rainey tried to intervene, and Watson turned to hit her, but Appellant stopped him. Appellant then said "let's go." Watson told Appellant to go inside and get something. Appellant did so, after which he and Watson walked to Appellant's car, and Appellant drove Watson away from the apartment.

Emergency personnel arrived to find the victim unconscious, looking as though he had been thrown "through a windshield." He never regained consciousness, remaining in a vegetative state until nine months later, when his family removed his feeding tube and he died. The cause of death was the delayed effects of or complications related to blunt-force head trauma.

(b) The evidence presented at trial and summarized above, when viewed in the light most favorable to the verdict, was sufficient to authorize a rational jury to find Appellant guilty of murder beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)). Although Appellant was not the person who kicked the victim into a vegetative state, he was an equally guilty party to the crime because he intentionally aided, abetted, and encouraged it. See OCGA § 16-2-20 (defining party culpability). Considering Appellant's conduct "before, during, and after" the beating, *Navarrete v. State*, 283 Ga. 156, 158 (656 SE2d

814) (2008), several facts indicate that he had the required intent. Appellant began the conflict, punching the victim shortly before Watson began to attack him. See id. at 158 (holding that the defendant's assaulting the victim shortly before another person stabbed him to death was one factor supporting party culpability). Appellant then "stood by and watched" as Watson mercilessly continued the assault. Id. But Appellant did not just express tacit approval of the attack; he encouraged Watson to "beat [the victim's] ass." See *Simpson v. State*, 265 Ga. 665, 665-666 (461 SE2d 210) (1995) (holding that while mere approval of a crime does not support party culpability, encouraging it does). Finally, Appellant told Watson they should leave and drove him away from the scene after watching him savagely beat the victim into unconsciousness. See *Teasley v. State*, 288 Ga. 468, 469-470 (704 SE2d 800) (2010) (holding that the defendant's driving his brothers away immediately after they shot the victim was one factor supporting party culpability).

Appellant resists this conclusion, arguing that he did not "spur Watson to act" and that he was the one who finally convinced Watson to stop. He appears to rely heavily upon testimony from his cousin Jones, who claimed that Appellant stood next to his car during the attack while calling for Watson to leave and, unlike Rainey, did not testify that Appellant encouraged Watson to "beat [the victim's] ass." But the conflict between Jones's account and Rainey's account was for the jury to resolve. See *Vega*, 285 Ga. at 33.

(c) Appellant also contends that the evidence was insufficient to show that the attack proximately caused the victim's death. He claims the medical examiner's testimony that blunt-force head trauma ultimately caused the victim's death had no probative value because the "sole basis" for the conclusion was hearsay — medical records compiled by other doctors. Appellant cites *Moore v. State*, 221 Ga. 636 (146 SE2d 895) (1966), where this Court held that " '[a]n [expert] opinion, based mainly upon representations out of court, can be no more competent testimony than the representations.' " Id. at 643 (citation omitted).

But it is not true that the medical examiner relied entirely on other doctors' medical records to reach his cause-of-death conclusion. The medical examiner also performed an autopsy, where he observed evidence of bleeding in the brain — bruising in the dura and cerebral cortex. And we have repeatedly held that an expert's opinion "is not objectionable merely because it is based, in part, on [others'] findings." *Treadwell v. State*, 285 Ga. 736, 742 (684 SE2d 244) (2009) (holding that a medical examiner's opinion was not objectionable because it was based partly on medical records he did not prepare, citing *Velazquez v. State*, 282 Ga. 871, 875 (655 SE2d 806) (2008)). See also *Roebuck v. State*, 277 Ga. 200, 202-203 (586

SE2d 651) (2003) (holding that a fingerprint expert could rely on a hearsay print card to help identify prints as the defendant's). "[E]ven when such testimony is based on hearsay, the lack of personal knowledge does not result in exclusion of the expert's opinion but merely presents a jury question as to the weight it is to be given." *Treadwell*, 285 Ga. at 742.

2. Appellant challenges the adequacy of his counsel's representation on several grounds. To prevail on any of these claims, Appellant

> must show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984).

*Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010).

(a) Appellant argues that his trial counsel insufficiently disputed that the attack proximately caused the victim's death. He says his counsel should have moved to exclude the medical examiner's testimony because it was based entirely on hearsay, or at least emphasized its second-hand nature in cross-examination; argued that the true cause of the victim's death was his family's decision to remove his feeding tube; and requested a jury instruction on proximate cause. As explained above, however, the medical examiner's opinion was not inadmissible simply because he considered the victim's medical records in forming it.

As for the arguments that trial counsel should have done more to dispute that the attack proximately caused the victim's death, we presume that counsel's decision not to do so was strategic, see *Brown v. State*, 288 Ga. 902, 908 (708 SE2d 294) (2011), and she confirmed as much at the motion for new trial hearing. Asked why she did not bring up the decision to remove the feeding tube at trial, counsel explained that her strategy was to emphasize the separation between Appellant's hitting the victim once inside Jones's apartment and Watson's kicking the victim repeatedly outside the apartment. Raising the issues surrounding the feeding tube would have been a digression, she explained — a decision she made after talking to the medical examiner about the injuries the victim had received, his hospitalization, and the decision to remove his feeding tube. It may also have been strategically wise for counsel to avoid blaming the victim's death on his family, which could have antagonized the jury. We cannot conclude that counsel's decision to emphasize the distinction between Appellant's and Watson's conduct rather than delve

into messy and potentially counter-productive causation issues fell outside the "wide range of reasonable professional assistance." *Russell v. State*, 269 Ga. 511, 511 (501 SE2d 206) (1998).

(b) Nor can Appellant prevail on his claim that his trial counsel gave him bad advice about the risks of testifying at trial. He testified at the motion for new trial hearing that, after the trial court advised him of his right to testify, his counsel warned him (incorrectly) that he could be impeached with an old drug conviction and an arrest for a gun charge, which caused him to decide not to testify. But when his trial counsel was asked whether she remembered giving the bad impeachment advice, she flatly and repeatedly said, "No." The trial court's decision to credit her testimony and discredit Appellant's, and thus to find no deficient performance, was not clearly erroneous. See *Dockery v. State*, 287 Ga. 275, 277 (695 SE2d 599) (2010). So we too reject this ineffectiveness claim.

(c) Appellant argues that his trial counsel should have called Watson as a witness.[2] Before trial, Appellant explains, Watson had signed a statement saying that Appellant did not hit, kick, or touch the victim when they were outside the apartment. Appellant adds that Watson testified at the motion for new trial hearing that Appellant had not encouraged or aided him in attacking the victim; in fact, Watson claimed that Appellant encouraged him to stop.

The trial court did not err by refusing to find ineffective assistance on this ground. Appellant's counsel cannot be judged ineffective for what Watson was willing to say *after* the trial, or in believing that he would not make a credible witness. See *Heard v. State*, 287 Ga. 554, 558 (697 SE2d 811) (2010) (holding that deciding which witnesses to call is a strategic decision). Indeed, Watson was hardly a consistent witness. He signed another pretrial statement saying that he was drunk during the attack and did not see Appellant do anything, and when asked at the motion for new trial hearing if he remembered the incident, he initially said, "Man, not really." The trial court's decision to discredit Watson's post-trial testimony was not clearly erroneous, see *Dockery*, 287 Ga. at 277, and we again cannot find that trial counsel was constitutionally deficient.

(d) Appellant argues that his counsel did not prepare adequately to impeach Rainey's testimony. At trial, Rainey said that Appellant encouraged Watson to "beat [the victim's] ass" during the attack. Appellant argues that she had not mentioned this remark before, including in interviews with his trial counsel, and yet his counsel

---

[2] After Appellant's conviction but before the hearing on Appellant's motion for new trial, Watson pled guilty to voluntary manslaughter and aggravated battery and was sentenced to 35 years in prison.

could not adequately challenge the claim because she neither had a third party present during her interviews with Rainey nor requested leave to withdraw from the case to testify about Rainey's failure to mention the "beat his ass" claim in the prior interviews. See *Wright v. State*, 267 Ga. 496, 498 (480 SE2d 13) (1997) (noting that the ABA Standards for Criminal Justice say that a "lawyer should avoid interviewing a prospective witness except in the presence of a third party").

The trial court did not err by rejecting this argument. Appellant's trial counsel did try to address the inconsistency between Rainey's testimony and their prior discussions. Once the State began eliciting testimony from Rainey about the interviews (though not specifically about their discussion of Rainey's "beat his ass" claim), trial counsel objected, but the trial court overruled her objection. She later unsuccessfully renewed it on the theory that the State had made her a fact witness, and unsuccessfully moved for a mistrial for this reason.

Furthermore, any error was not prejudicial. Appellant's counsel impeached Rainey extensively on her testimony that Appellant had encouraged Watson to beat the victim. She questioned Rainey about the remark not being in her statement to the police and about not seeking to add it when the police gave her the statement to review. She then confronted Rainey directly about their own interviews, and Rainey admitted that she had never mentioned to counsel that Appellant told Watson to "beat [the victim's] ass." Counsel's testimony would have done nothing but confirm that admission. Thus, Appellant has not shown a "reasonable probability" that trial counsel's failing to invite a third person to her interviews with Rainey or to withdraw from the case affected the outcome of the trial. *Long*, 287 Ga. at 891.

(e) Finally, Appellant argues that his trial counsel was ineffective for failing to request a jury charge on the defense of abandonment. He claims that there was evidence that he did not participate in the beating outside the apartment but instead executed a "voluntary and complete renunciation of his criminal purpose," OCGA § 16-4-5 (a), by going to his car and encouraging Watson to leave. However, a jury charge on abandonment is available only where the defendant first "admit[s] engaging in the [underlying] crime." *Younger v. State*, 288 Ga. 195, 197 (702 SE2d 183) (2010). Appellant made no such admission, and so his trial counsel committed no error on this score. And even if he had admitted participating in the murder, it would be a stretch to say he was entitled to an abandonment charge, because Appellant was the driver of the getaway car. See *Bihlear v. State*, 295 Ga. App. 486, 489 (672 SE2d 459) (2009) (holding that an abandonment charge was not warranted partly because the defendant drove

the getaway car). See also *Teasley*, 288 Ga. at 469-470 (holding that the defendant's driving his brothers away immediately after they shot the victim was one factor supporting party culpability).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Chaunda Brock, Deah B. Warren*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige R. Whitaker, Marc A. Mallon*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Mary Beth Westmoreland*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Mary K. Ware*, Assistant Attorney General, for appellee.