## A11A0158. DUNSON v. THE STATE.

(711 SE2d 53)

McFADDEN, Judge.

A jury found Joshua Dunson guilty of kidnapping with bodily injury, aggravated child molestation, aggravated anal sodomy, child molestation, enticing a child for indecent purposes, and cruelty to children. Dunson appeals, raising numerous claims of error. He challenges the sufficiency of the evidence supporting the verdicts, but we find the evidence sufficient. He also claims that the trial court erred in admitting statements he made to police before he received *Miranda* warnings. The trial court, however, properly found that Dunson was not in custody when he made the statements and thus was not entitled to *Miranda* warnings. Dunson further argues that the trial court erred in admitting alleged hearsay, allowing the State to bolster a witness, and instructing the jury. Again, we find no reversible error. Finally, although Dunson claims that he received ineffective assistance of counsel at trial, the record shows that the claimed deficiency in trial counsel's performance caused no prejudice. Accordingly, we affirm.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. See *Phanamixay v. State*, 260 Ga. App. 177, 178 (1) (581 SE2d 286) (2003). We do not weigh the evidence or resolve issues of witness credibility, but merely deter-

mine whether the evidence was sufficient to find the defendant guilty of the crimes charged beyond a reasonable doubt. See id.

So viewed, the evidence shows that on the evening of December 17, 2005, a motorist saw a young boy running down the road, crying. The motorist stopped to help the boy, who had on a shirt and coat, but no pants, underwear, or shoes. The boy told her that a man had taken him into the woods, "stuck his pee-pee in his butt," and threatened to kill him if he reported the incident. The motorist thought the boy referred to the man as "Tracen" or "Tracey," but the boy was upset and difficult to understand.

The boy was taken to a hospital, where he again reported that his assailant had "put something in [his] butt." A medical examination of the boy revealed a rectal tear, blood in his rectum, abrasions on his body, and other evidence of trauma. The boy also tested positive for chlamydia.

Earlier that day, the boy had spent time at his uncle's home with several other individuals, including Dunson. The boy later told his uncle that the man who assaulted him had brown skin, drove a gray car, and had been at the uncle's house. Noting that Dunson was the only person at his home that afternoon who fit the boy's description, the uncle asked the boy whether Dunson had hurt him. The boy indicated that Dunson was the perpetrator.

The police interviewed Dunson, who admitted that he had assaulted the boy by placing a bottle in the boy's anus. Dunson also told an officer that he was "sorry for what happened to the little boy." The police arrested Dunson following the interview. While in jail, he was prescribed medication used to treat sexually transmitted diseases such as chlamydia.

Based on the evidence presented, the jury found Dunson guilty of numerous sex-related offenses. Dunson challenges the verdicts on appeal, arguing that the State failed to prove that he was the man who assaulted the boy. He notes that the boy referred to his assailant as "Tracen" or "Tracey," and he questions the reliability of other testimony linking him to the crimes. The State, however, offered significant evidence connecting Dunson to the assault, including Dunson's confession to police, the uncle's testimony that Dunson was the only individual who fit the boy's description, and evidence that both Dunson and the boy were treated for a sexually transmitted disease. Such evidence was more than sufficient to support the jury's conclusion that Dunson committed the crimes. See *Phanamixay*, supra at 178-179; *Pinckney v. State*, 259 Ga. App. 316, 320 (2) (576 SE2d 677) (2003).

2. Dunson argues that the trial court erred in admitting incriminating statements he made to police during his pre-arrest interview. He asserts that the statements should have been excluded because

police did not inform him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He further argues that he gave the statements for a "hope of benefit," rendering them involuntary and inadmissible. We disagree.

(a) *Miranda* warnings are a prerequisite to admission of evidence of interrogations conducted after a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." (Punctuation omitted.) *Axelburg v. State*, 294 Ga. App. 612, 613 (1) (669 SE2d 439) (2008). Whether a person is "in custody" for purposes of *Miranda* is a mixed question of law and fact, and we will not reverse the findings of fact that underlie the trial court's legal conclusion if there is any evidence to support them. *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1997). Ultimately, a court must determine if, under the totality of the circumstances, "a reasonable person — one neither overly apprehensive because of criminal conduct nor insensitive to the seriousness of the circumstances — would have felt he or she was not at liberty to terminate the interrogation and leave." (Punctuation and footnote omitted.) *Axelburg*, supra.

Dunson argues that the police circumvented *Miranda* using the two-stage or question-first interrogation procedure identified, extensively documented, and condemned by the United States Supreme Court in *Missouri v. Seibert*, 542 U. S. 600 (124 SC 2601, 159 LE2d 643) (2004). Our Supreme Court has summarized *Seibert* as follows:

> The [United States] Supreme Court's decision in *Seibert* deals with what the Court referred to as a "two stage" or "question first" interrogation procedure, in which police first question a suspect without administering *Miranda* warnings, gain a statement from the suspect, then administer *Miranda* warnings, and have the suspect repeat that which the suspect has already related, often with little interruption in time. The Court noted that in such circumstances, it is unlikely that the *Miranda* warnings will effectively advise a suspect of his rights. The Court discussed its prior opinion in *Oregon v. Elstad*, 470 U. S. 298, 307 (105 SC 1285, 84 LE2d 222) (1985). *Elstad* allowed admission of a statement that followed *Miranda* warnings that had not been given the suspect until after a statement was made in violation of *Miranda*, provided that, under all the circumstances, the subsequent statement was determined to be knowingly and voluntarily made. The *Seibert* opinion distinguished *Elstad*, and essentially established an "effective warning" test, requiring an examination of circumstances to determine if the *Miranda* warnings given

were effective; the opinion found that the warnings given to Seibert were ineffective to advise her of her rights, and thus her postwarning statements had to be suppressed. Although the Court observed that the interrogation strategy employed in *Seibert* was deliberate, and even was admitted to be so by the police, the Court specifically noted that a police policy "will rarely be as candidly admitted as it was here," and declared that "the focus is on facts apart from intent that show the question-first tactic at work." As the Court found that the warning given could not effectively advise Seibert of her right to remain silent, her postwarning statements were inadmissible. In applying that analysis, "the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review."

(Citations, punctuation and footnotes omitted.) *State v. Pye*, 282 Ga. 796, 799-800 (653 SE2d 450) (2007).

Pye had been convicted for participating in a murder that arose out of retaliation for the theft of a set of wheel rims. "Pye voluntarily went to the police station to discuss the theft of his wheel rims, and that is all that was discussed initially. Shortly after Pye was confronted about killing [the victim], he was told to stand up, his bag was searched, and his person was patted down." *Pye*, supra at 801. The State conceded, and our Supreme Court "agree[d] that a reasonable person in Pye's position would not believe that he was free to leave once the detectives began questioning him about the murder, and that he was in custody at that point." (Citation omitted.) Id.

Our Supreme Court later distinguished *Pye* in *State v. Folsom* on the basis that the pre-*Miranda* questioning in *Folsom* was not related to "Folsom's connection to the crime" at issue. *State v. Folsom*, 286 Ga. 105, 110 (2) (686 SE2d 239) (2009).

This court distinguished Pye in *Axelburg*, supra, on the basis that in *Pye*, "the state conceded that the defendant was not free to leave during questioning," while Axelburg had been assured "he was free to leave if at any point in the interview he did not like what was being asked." *Axelburg*, supra at 614-615.

The present case is indistinguishable from *Axelburg*. Like Axelburg, Dunson was assured that, although he was a suspect, he was not under arrest and could leave at any time. The credibility of such assurances must be evaluated in light of the admonitions from our Supreme Court and the Supreme Court of the United States that the two-stage or question-first interrogation procedure "will rarely be as candidly admitted" as it was in *Seibert*. *Seibert*, supra at 616, n. 6;

*Pye*, supra at 800. As in *Axelburg*, however, we find that there was some evidence to support the trial court's determination that the police were not employing that improper procedure and that a reasonable person in Dunson's place would have believed that he was free to leave.

The investigating officers did not inform Dunson of his *Miranda* rights prior to the pre-arrest interview. Instead, they told him that he was a suspect, but that he was not under arrest and could leave at any time. Dunson agreed to speak with the officers, who transported him to the police station because he did not have other transportation. During the interview, which took place in an administrative office, the officers again assured him that he could leave if he wished. Dunson continued speaking with police and eventually made several incriminating statements.

After hearing the evidence, the trial court determined that these statements were not subject to *Miranda*. We find no error. Given the totality of the circumstances, including that Dunson was not formally arrested, agreed to talk to the police, and was advised that he could leave the interview if he wished, the trial court was authorized to conclude that Dunson was not "in custody" at the time. See *Axelburg*, supra at 614-615.

The fact that Dunson knew before the interview that he was a suspect is not determinative, particularly in light of the officers' assurances that Dunson could leave the interview. See *Axelburg*, supra at 615. The testimony of one officer that he thought Dunson should be arrested if he tried to leave is likewise not determinative. See *Hardin v. State*, 269 Ga. 1, 3 (2) (a) (494 SE2d 647) (1998). An officer's knowledge or belief impacts the custody issue "only if [it was] somehow manifested to the individual under interrogation." *Stansbury v. California*, 511 U. S. 318, 325 (114 SC 1526, 128 LE2d 293) (1994); see also *Hardin*, supra. The trial court was authorized to conclude that the officer's belief in this case did not impact custody.

(b) Alternatively, Dunson argues that his pre-arrest statements were involuntary because he made them for a "hope of benefit." Specifically, he claims that the officers gave him a hope of benefit when, after he disclosed that he had been molested as a child, they offered to secure counseling for him. He also notes that during the interview, an officer asked him what sentence the person who assaulted the victim should receive. Dunson replied: "I think they need about three years, some counseling, and that's about it." According to Dunson, this exchange encouraged his belief regarding the amount of prison time that might result from a conviction.

Neither argument has merit. It is true that a confession is only admissible if "made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA §

24-3-50. But the offer to obtain counseling for Dunson did not bear on the question of punishment. It involved a collateral benefit, and promises of a collateral benefit do not impact a statement's admissibility. See *Smith v. State*, 281 Ga. App. 91, 94 (3) (635 SE2d 385) (2006); OCGA § 24-3-51 ("The fact that a confession has been made under . . . a promise of collateral benefit shall not exclude it.").

Furthermore, the "hope of benefit" must be induced by another. See OCGA § 24-3-50; *Ramos v. State*, 198 Ga. App. 65, 66 (1) (400 SE2d 353) (1990). A hope that "originates in the mind of the person making the confession and which originates from seeds of his own planting [will] not exclude a confession." (Punctuation omitted.) Id. Dunson has offered no evidence that the officers induced him to believe he would receive a three-year sentence. He came up with that scenario on his own. The trial court, therefore, properly found his statements voluntary and admissible. See *Smith*, supra.

3. Dunson claims that the trial court erroneously allowed the State to bolster the credibility of a prison inmate, who testified that he heard Dunson admit to the sexual assault. Specifically, Dunson challenges the trial court's decision to admit the inmate's prior consistent statement to police. Even if the statement was inadmissible, however, Dunson cannot show that the error was harmful or requires reversal. Significant other evidence — including Dunson's own admissions to police — implicated him in the sexual assault. Under these circumstances, it is highly unlikely that evidence regarding the inmate's prior statement impacted the verdict. See *Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009); *Howie v. State*, 281 Ga. App. 730, 732 (637 SE2d 134) (2006).

4. Dunson also argues that the trial court erred in admitting hearsay evidence regarding his treatment for venereal disease while in jail. Dunson, however, did not object to the evidence at trial and thus has waived this error for purposes of appeal. See *Wood v. State*, 304 Ga. App. 52, 52-53 (2) (695 SE2d 391) (2010). Furthermore, a nurse who worked at the jail testified that he ordered an antibiotic for Dunson that was used to treat sexually transmitted diseases, including chlamydia. That testimony was not hearsay. See OCGA § 24-3-1 (a) ("Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons.").

5. Dunson enumerates a portion of the trial court's jury charge as error. During its instructions, the trial court noted that several of Dunson's statements to police had been admitted into evidence. The court charged jurors that before they could consider such statements, they had to answer two questions. First, they needed to decide whether Dunson was warned of his constitutional (*Miranda*) rights, understood those rights, and voluntarily waived them. Sec-

ond, they had to determine whether Dunson made the statements freely and voluntarily. The trial court concluded:

> If you find that all of the warnings as to Defendant's constitutional rights were given, that the Defendant did clearly understand the meaning of what was said, and knowingly gave up such rights and the statement was voluntary, then you may consider it as evidence.

The State objected to this portion of the charge. It argued that the reference to constitutional rights was improper with respect to the pre-arrest interview because the trial court had found that Dunson was not in custody at the time and thus not entitled to *Miranda* warnings. The trial court agreed and recharged the jury as follows: "The constitutional charge that I gave you about the constitutional rights whereas that you have a right to remain silent, attorneys, and things of that nature applies only to those statements that would have been made after the formal arrest."

On appeal, Dunson argues that the trial court's recharge improperly led jurors to believe that they were not required to assess whether he made the pre-arrest statements freely and voluntarily. We disagree. "In determining whether the recharge contained error, it is fundamental that we must look at not only the recharge but the original charge as well, as jury instructions must be read and considered as a whole in determining whether the charges contain error." (Punctuation omitted.) *Wilcox v. State*, 297 Ga. App. 201, 209 (5) (677 SE2d 142) (2009).

The initial charge in this case broke the jury's analysis into two phases: constitutional rights and voluntariness. Given the trial court's determination that Dunson was not "in custody" before his formal arrest, the constitutional issues were not before the jury with respect to the pre-arrest interview. The recharge, therefore, appropriately instructed jurors that the constitutional portion of the original charge applied only to post-arrest statements. The recharge did not address — or alter — the original voluntariness instruction. Dunson, therefore, has not demonstrated error in the recharge. See *Wilcox*, supra.

6. Finally, Dunson argues that he received ineffective assistance of counsel at trial. To prevail on this claim, Dunson must demonstrate that trial counsel's performance was deficient and that the deficiency prejudiced his defense. See *Flemming v. State*, 301 Ga. App. 711, 712 (2) (688 SE2d 653) (2009). "The test for prejudice is whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency." (Punctuation omitted.) Id. at 713.

In this case, one of the officers who interviewed Dunson testified that Dunson admitted to having a violent temper and not being satisfied by sex. The officer then characterized Dunson as a person who was "just violent" and had "a problem with sex." According to Dunson, trial counsel should have objected to the officer's characterizations. Even if an objection should have been made, however, Dunson cannot show prejudice. Given his admission regarding his violent temper and dissatisfaction with sex, as well as the significant evidence implicating him in the crimes, Dunson cannot demonstrate any likelihood that the outcome of his trial would have been different had the allegedly objectionable characterizations been excluded. Accordingly, his ineffective assistance claim lacks merit. See *Flemming*, supra.

*Judgment affirmed. Andrews, J., concurs. Phipps, P. J., concurs in judgment only.*

DECIDED MAY 5, 2011.

*Peter D. Johnson*, for appellant.
*Richard A. Mallard, District Attorney, Michael T. Muldrew, Assistant District Attorney*, for appellee.