311 Ga. 187
FINAL COPY

S21A0006.  VOLKOVA v. THE STATE.

MELTON, Chief Justice.

Liubov Volkova appeals her conviction for the murder of her husband, Jordan Whitson.[1] On appeal, Volkova contends that the trial court erred by failing to properly instruct the jury on how to consider a particular statement she made to police and that her trial counsel provided constitutionally ineffective assistance. For the reasons set forth below, we affirm.

---

[1] Volkova was indicted on June 22, 2016, for malice murder, felony murder predicated on aggravated assault, and aggravated assault. At a trial held from July 23 to August 3, 2018, Volkova was found guilty of all three counts. The trial court sentenced Volkova to serve life in prison without the possibility of parole for malice murder. The conviction for felony murder was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993), and the count of aggravated assault was merged with Volkova's malice murder conviction for purposes of sentencing. Volkova filed a motion for new trial on August 24, 2018, and amended it on October 18, 2019 and February 7, 2020. Following a hearing, the trial court denied the motion on March 3, 2020. Volkova timely filed a notice of appeal on March 11, 2020, and her case was docketed to the term of this Court beginning in December 2020. Volkova's case was orally argued on December 8, 2020.

1. The evidence presented at trial shows that Volkova placed a 911 call at 1:37 a.m. on November 1, 2015, and she stated that Whitson had been shot inside the couple's home.[2] When police arrived, Volkova led them to Whitson's body, which was lying at the bottom of a set of stairs. One shell casing was found near the body, and there was blood on Whitson's hands and blood spatter up the stairs. Whitson had been shot through his right cheek, and the bullet lodged in his head, leading to his death. The handgun that caused Whitson's death was found on a table in the master bedroom, where Volkova had placed it. Given the lack of stippling around the wound and the location of Whitson's body, Investigator Ted Bailey determined that the crime scene was not consistent with a self-inflicted gunshot wound.

After an autopsy, the medical examiner, Dr. Carol Terry, determined that Whitson's cause of death was suffocation and blood loss due to a gunshot wound to the head. The shape of the entrance

---

[2] At the time, the only other person inside the home with Volkova and Whitson was their minor child.

wound and the type of tearing, along with the bullet trajectory, indicated that the bullet entered at a downward angle. Because there was no soot, gunpowder, stippling, or bruising around the wound and no gunpowder on Whitson's clothing, Dr. Terry further determined that the gunshot was not a close-contact or medium-distance wound. Given this information, Dr. Terry determined that the wound could not have been self-inflicted, either deliberately or by accident.

Stephen Deady, the State's firearm expert, examined the handgun used to kill Whitson, a 9 mm Heckler and Koch P7. Deady found that the drop safety on the gun was functioning properly, meaning that the shooting was not consistent with an accidental discharge. Deady also performed tests to determine the distance of stippling and gunpowder particle deposits for the firearm. Deady found that Whitson was shot from more than 18 inches away. Given these results, along with Whitson's body measurements, Deady determined that Whitson's death was not consistent with a self-

3

inflicted injury.[3]

2. Volkova first contends that the trial court erred in denying her written request to charge the jury on the entirety of Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.32.21, an instruction regarding the manner in which a jury should consider statements made by a defendant. Specifically, with regard to a statement she made to police while being interviewed at the police station a few days after Whitson's shooting, Volkova argues that the charge, as given by the trial court,[4] omitted custody as an

---

[3] Volkova does not challenge the sufficiency of the evidence to support her convictions, and this Court no longer considers as a matter of course sufficiency of the evidence in non-death penalty appeals in which it is not an enumerated error. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020).

[4] The trial court charged the jury as follows:

> Now, in this case statements that [Volkova] allegedly made were offered to you for your consideration. Before you would consider this as evidence you must determine whether you believe those alleged statements to be voluntary. The law says to be voluntary a statement must be freely and willingly given and without coercion, duress, threats, use of violence, fear of injury, or any suggestions or promises of leniency or reward. Obviously, a statement that is induced by the slightest hope of benefit or remotest fear of injury is not a voluntary statement. So to be voluntary, a statement must be the product of one's own free will. It must not be under compulsion or necessity imposed by others. So as you look at the evidence and determine whether these

4

alleged statements were voluntary, you may also consider as to what extent she may have been informed of her constitutional rights. You may consider, if there's evidence of it, of the duration or of the conditions of any detention imposed on her, or any factors relevant to the question of whether or not these alleged statements were freely and voluntarily made. The burden of proof is upon the State to establish that if there was this statement, that it was freely and willingly made. If you do not find that the statement is voluntary, then you may not consider it for any purpose. As I said before, you may consider whether the defendant was advised of her constitutional rights, whether she clearly understood them, and knowingly gave them up. The constitutional rights that I'm talking about are that someone be told they have the right to remain silent; that if they choose not to remain silent, anything they say could be used against them in court; that they have the right to consult with a lawyer before any questioning, and to have the lawyer present with them at all times during any questions; and if they do not have the money to hire a lawyer, a lawyer would be provided to represent them before any questioning and to be present with them during any questioning. If a defendant exercises one of those constitutional rights, such as requesting an attorney, or the right to remain silent, then the police cannot ask the defendant any further questions without, for instance, the attorney being present, if they requested an attorney. If, of course, the person requests that they not be asked anymore [sic] questions then the police would have to, again, abide by that. So, you, the jury, if you find that she made statements and that these statements were voluntary then you may consider them as evidence in the case. Again, if so, you would apply the general rules for testing the believability or credibility of the witnesses to that statement, decide what weight, if any, you will give it to all or any part of that evidence.

The law says that you should consider with great care and caution the evidence of any out-of-court statement allegedly made by the defendant that's been offered by the [S]tate. The jury may believe any such statement in whole or in part. You may believe that which you find to be true and reject that which you find to be untrue. Again, the jury alone has the duty to apply the general rules for testing the believability of witnesses and decide what weight should be given to any or all of that evidence.

5

issue to be determined by the jury and failed to inform the jury that a knowing and voluntary waiver of Volkova's *Miranda*[5] rights was a *mandatory* prerequisite to the jury's consideration of her statement to police, rather than a discretionary consideration.[6] This argument has no merit.

Volkova raises this challenge specifically with regard to the statement she made on November 3, 2015 to Detective John Cleland

---

[5] *Miranda v. Arizona*, 384 U. S. 436, 444-445 (86 SCt 1602, 16 LE2d 694) (1966).

[6] Volkova argues that the trial court should have included the following language in its charge:

If you find that the statement was made while in custody and as a result of police questioning, you must also determine whether the defendant was advised of his/her constitutional rights and whether the defendant clearly understood and knowingly gave up such rights. The constitutional rights that law enforcement officers must explain and that the defendant must understand and voluntarily give up before any custodial statement is taken by law enforcement are as follows:
1) The defendant had a right to remain silent;
2) If the defendant chose not to remain silent, anything he/she (said) could be used as evidence against the defendant in court;
3) The defendant had a right to consult a lawyer before any questioning and to have the lawyer present with him/her at all times during any questions; and
4) If the defendant did not have money for a lawyer, a lawyer would have been provided for him/her to represent him/her before any questioning and to be present with him/her during any questioning.

6

at the police station.[7] Detective Cleland testified that, during this interview, Volkova was free to leave at all times. He further testified that he decided, as a matter of caution, to "err on the safe side and just advise [Volkova] of her *Miranda* rights prior to us speaking." Volkova never indicated that she did not want to speak to Detective Cleland, she never asked for an attorney, and she never asked to stop the interview. Volkova left at the end of the interview without interference.

Prior to trial, Volkova filed a motion to suppress her statement, and a *Jackson-Denno*[8] hearing was held. During this hearing, Volkova's trial counsel conceded that Volkova's interview with Detective Cleland was non-custodial, stating, "It's purely voluntariness to be [determined]. She was not in custody. So issues that deal with custodial interrogation are really not before the Court." After considering the evidence, the trial court ruled that

[7] During the interview, Volkova admitted to some tension in the relationship with her husband, but she denied shooting him. Although Volkova gave other statements to police at different times, she bases her arguments raised in this appeal on this specific interview at the police station.

[8] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

Volkova was not in custody at the time that the statement was given to Detective Cleland and that Volkova's statement was admissible.

Nonetheless, during her subsequent trial, Volkova requested that the trial court instruct the jury on the entirety of Suggested Pattern Charge § 1.32.21, including instructions that it was mandatory for the jury to determine whether Volkova was in custody and whether she had voluntarily and knowingly waived her *Miranda* rights prior to giving the statement. Volkova maintained that the jury had the right to effectively reject the trial court's finding that her interrogation was non-custodial. The trial court denied Volkova's request to charge, stating: "The Court has made a ruling that I make the decision of whether [Volkova is] in custody or not in custody, and that was preserved in pre-trial rulings. . . ." In accordance with this ruling, the trial court instructed the jury on the voluntariness of Volkova's statements, but did not include a mandate that the jury first make an independent determination of custody and whether *Miranda* rights were properly given and knowingly and voluntarily waived.

The trial court was correct. We have previously recognized that, "[w]hen the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. See *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) ('{W)hen a motion to suppress is heard by the trial judge, that judge sits as the trier of facts.')." *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). We have also recognized that

> [d]etermining the voluntariness and, consequently, the admissibility of a defendant's statement in a criminal case is a two-step process. Initially, the trial court addresses the issue outside the presence of the jury and, if the statement is determined to be voluntary, it is admitted for the jury to make the ultimate determination as to its voluntariness and, thus, its probity as inculpatory evidence.

*Freeman v. State*, 295 Ga. 820, 821-822 (2) (764 SE2d 390) (2014) (citation and punctuation omitted).

In *Dunson v. State*, 309 Ga. App. 484, 490 (5) (711 SE2d 53) (2011), this two-step process was considered in a situation similar to the present matter. The defendant in *Dunson* made several

9

statements to police, one before arrest and others after arrest. With regard to the pre-arrest statement, the trial court found that the defendant was *not* in custody at the time the statement was made. See id. Initially, the trial court gave the jury a single charge that was purportedly applicable to all of the defendant's statements, both before and after arrest. The trial court instructed:

> If you find that all of the warnings as to Defendant's constitutional rights were given, that the Defendant did clearly understand the meaning of what was said, and knowingly gave up such rights and the statement was voluntary, then you may consider it as evidence.

Id. The State objected to this charge, arguing that the constitutional rights implicated in *Miranda* were not applicable to the defendant's non-custodial pre-arrest statement. See id. The trial court agreed and recharged the jury:

> The constitutional charge that I gave you about the constitutional rights whereas that you have a right to remain silent, attorneys, and things of that nature applies only to those statements that would have been made after the formal arrest.

Id. In considering the propriety of this recharge, the Court of Appeals held:

The initial charge in this case broke the jury's analysis into two phases: constitutional rights and voluntariness. Given the trial court's determination that [the defendant] was not "in custody" before his formal arrest, the constitutional issues were not before the jury with respect to the pre-arrest interview. The recharge, therefore, appropriately instructed jurors that the constitutional portion of the original charge applied only to post-arrest statements. The recharge did not address — or alter — the original voluntariness instruction.

Id. Therefore, because the trial court had determined that the defendant was not in custody when the pre-arrest statement was made, it was not proper to instruct the jury that the protections of *Miranda* applied to that statement. Id.

These precepts are reflected in Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.32.15, which states: "If the court determines the defendant is/was in custody, the court should give voluntariness and *Miranda* charges. If the court determines the defendant is/was *not* in custody, *the court should give the voluntariness charges only*." (Emphasis supplied.)

Here, the trial court, after conducting a proper *Jackson-Denno* hearing and review, made the necessary factual findings to

11

determine that Volkova was not in custody at the time she made her statement.[9] And, at this hearing, Volkova *conceded* that she was not in custody. Therefore, all facts and circumstances relating to the issue of custody had been determined by the trial court and conceded by Volkova prior to trial. Accordingly, the trial court appropriately gave voluntariness charges only. See *Dunson*, supra, 309 Ga. App. at 490 (5). An instruction treating Volkova's statement as custodial and requiring the jury to find a waiver of *Miranda* rights, as Volkova requested, would have been *incorrect* under the law, so the trial court did not err by rejecting it. See, e.g., *Jackson v. State*, 306 Ga. 475, 477 (2) (831 SE2d 755) (2019) (jury instructions must be adjusted to the evidence and be correct and complete statements of law); *Gonzalez v. State*, 277 Ga. App. 362, 370 (10) (626 SE2d 569) (2006) (requested charge that *Miranda* applied to in-custody statement was not adjusted to the evidence as the trial court had previously determined the statement was not made in response to

___

[9] On appeal, Volkova attempts to base her argument on the fact that Detective Cleland read *Miranda* rights to her as a precaution, but this fact alone does not mean that Volkova was in custody.

12

interrogation).

3. Next, Volkova contends that trial counsel rendered constitutionally ineffective assistance in two ways: (a) by failing to object when, during direct examination, Dr. Terry, the medical examiner, mentioned another expert who had been hired by the defense but whom the defense chose not to call to testify at trial and (b) by failing to object to the prosecutor's statements during closing argument regarding Volkova's failure to call witnesses to support her case. We conclude that Volkova has not met her burden of proving she received constitutionally ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance of counsel, [a defendant] must prove both deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, [a defendant] must show that . . . trial counsel performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. To establish prejudice, [a defendant] must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. We need not address both components of this test if [a

13

defendant] has not proved one of them. See *Walker v. State*, 301 Ga. 482, 489 (801 SE2d 804) (2017).

*Watson v. State*, 303 Ga. 758, 761-762 (2) (d) (814 SE2d 396) (2018).

(a) Volkova first maintains that trial counsel provided constitutionally ineffective assistance by failing to object when Dr. Terry mentioned a defense expert who was not called as a witness. Prior to trial, Volkova hired Chris Robinson, a firearms expert, to examine the evidence and make an expert determination as to the circumstances of Whitson's death. Ultimately, Volkova decided not to call Robinson as a witness and informed the State of this fact before trial.[10] During the State's direct examination of Dr. Terry, the following exchange took place:

> Q: Okay. Now, were you contacted in this case by an expert for the defense, Chris Robinson?
> A: Yes, I was.
> Q: Okay. And did he ask you about contact-range wounds?
> A: He did not specifically ask me about contact range, he asked me – or we discussed the entrance wound a little bit. He did not disclose to me exactly what he was thinking. But we discussed the entrance wound and he certainly was aware of what my opinion was.
> Q: Okay.

[10] At the motion for new trial hearing, trial counsel stated that Robinson's findings were not helpful to the defense.

14

A: And may I add at that time he did not contradict me either.
Q: Okay.

At that point, defense counsel objected as follows:

> This is definitely a substantive objection. There's no problem in [the State] asking whether or not [Dr. Terry] had communication with an expert [who] may or may not have been hired by the defense. But when [Dr. Terry] gives the opinion in an unresponsive fashion that [Robinson] didn't contradict her or disagree with her, that's hearsay. And that's not admissible for any reason whatsoever. The State knows that [Robinson is] not going to be a witness. And that is a hearsay statement. It's inadmissible under any stretch of the imagination. It needs to be struck and the jury needs to be told to disregard it. I'm still going to move for a mistrial because that is not an appropriate response in communicating something of this nature. Everything up to that point was okay, but that [Dr. Terry] volunteered.

Following this objection, the motion for mistrial was denied, but the trial court did instruct the jury to disregard Dr. Terry's non-responsive statement that Robinson did not contradict her findings.[11]

Volkova now contends that trial counsel performed deficiently

---

[11] No evidence of Robinson's specialty as an expert or any of his conclusions was elicited at any point.

15

by failing to object to the entirety of Dr. Terry's statements regarding Robinson at the moment Robinson was first mentioned. Specifically, Volkova contends that Dr. Terry's testimony was both irrelevant and unduly prejudicial under OCGA §§ 24-4-401 and 24-4-403[12] and that trial counsel should have immediately objected on this ground. Volkova, however, premises this contention on cases that set forth judicially created exclusionary rules based on an interpretation of Georgia's *old* Evidence Code. See *Neuman v. State*, 297 Ga. 501, 504 (2) (773 SE2d 716) (2015) ("attorney-client privilege applies to confidential communications, related to the matters on which legal advice is being sought, between the attorneys, their agents, or their client, and an expert engaged by the attorney to aid in the client's representation; the privilege is not waived if the expert will neither serve as a witness at trial nor provide any basis for the

---

[12] OCGA § 24-4-401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence may be excluded under OCGA § 24-4-403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

16

formulation of other experts' trial testimony"); *Blige v. State*, 264 Ga. 166, 166-167 (1)-(2) (441 SE2d 752) (1994) (although an expert hired by one party could be subpoenaed for trial by the opposing party on the same basis as any other witness, the fact of the expert's original employment by the first party was irrelevant and could be prejudicial). As Volkova correctly conceded at oral argument and in a subsequent reply brief, these old Evidence Code cases have been statutorily abrogated by the enactment of our current Evidence Code, which governs this case. See *State v. Orr*, 305 Ga. 729, 738-739 (3) (827 SE2d 892) (2019). As such, Volkova's contention that counsel performed deficiently by failing to object based on abrogated precedent has no merit. See *Mattox v. State*, 308 Ga. 302, 304-305 (2) (840 SE2d 373) (2020) (failure to make a meritless objection cannot provide the basis upon which to find ineffective assistance of counsel).

Following oral argument, Volkova filed a supplemental brief in which she attempts to re-focus her argument solely on OCGA § 24-4-401, OCGA § 24-4-403, and the current Evidence Code. In making

this argument, however, Volkova does not rely on the plain text of the current rules and points to no controlling precedent that was in effect *at the time of her trial* to support her contention. Instead, she extrapolates from the abrogated cases previously mentioned in order to speculate how OCGA § 24-4-401 and OCGA § 24-4-403 might be applied at some future date.[13] Because her argument is based on abrogated cases and speculation about future law, Volkova cannot prove that defense counsel was deficient in the manner in which she now claims.[14]

---

[13] In her supplemental brief, Volkova cites *United States v. Eyster*, 948 F2d 1196, 1205-1207 (II) (A) (11th Cir. 1991), for the proposition that the State may not vouch for the credibility of a witness by using facts that are not in evidence, but that case is wholly distinguishable from this matter on its facts. In *Eyster*, the defense contended that a certain government witness was willing to perjure himself, and, in support of this argument, the defense contended that the government witness had previously pled guilty to a crime he could not have possibly committed. In an attempt to rehabilitate this witness, the prosecutor, with no evidentiary support, improperly vouched for the witness's credibility by suggesting that there was a typographical error in the plea transcript that listed the incorrect number of the count to which the government witness had actually pled guilty. The prosecutor improperly insinuated that the witness meant to plead guilty to a different count. Unlike the present case, the prosecutor's statements were considered under the aegis of prosecutorial misconduct, not relevance under Rules 401 and 403.

[14] Because Volkova's arguments in this case are brought only as claims of ineffective assistance of counsel, we need not decide today how OCGA § 24-4-401 and OCGA § 24-4-403 would apply to Dr. Terry's testimony.

Trial counsel does not perform deficiently by failing to advance a legal theory that would require "an extension of existing precedents and the adoption of an unproven theory of law." (Citation omitted.) *Williams v. State*, 304 Ga. 455, 458 (2) (818 SE2d 653) (2018). See also *Rhoden v. State*, 303 Ga. 482, 486 (2) (a) (813 SE2d 375) (2018) (trial counsel is not required to argue beyond existing precedent). Moreover, even if Volkova could show that trial counsel performed deficiently by failing to object in this circumstance, she has failed to show that she suffered any resulting prejudice. Ultimately, the jury was provided with no information about Robinson or his conclusions. In fact, Dr. Terry testified that Robinson did *not* disclose to her what he was thinking about the case, and the jury was instructed to disregard Dr. Terry's unsolicited observation that Robinson never contradicted her (which is nonetheless consistent with the fact that Robinson did not disclose what he was thinking at all). Though Volkova speculates that the jury may have drawn some negative inference from the mention of Robinson's name, there was no evidence presented to the jury on

which any negative inference could have been based. And, in any event, "mere speculation on the defendant's part is insufficient to establish *Strickland* prejudice[.]" *Pierce v. State*, 286 Ga. 194, 198 (4) (686 SE2d 656) (2009).

Therefore, Volkova's claim of constitutionally ineffective assistance fails because she has shown neither deficient performance nor prejudice.

(b) In a related argument, Volkova contends that trial counsel should have objected to the State's closing argument when the prosecutor pointed out that Volkova had provided no expert witnesses to support her defense. The State argued:

> I want to take one minute to talk about what we didn't hear. The defense is never under any obligation or any burden whatsoever to produce any evidence, ever, in any criminal case. That's the beauty of the American justice system. The State has the burden of proof. We have to prove our case beyond a reasonable doubt. That does not mean that they do not have the same opportunities we do. You heard Mr. Sadow [defense counsel]. He was excellent with just about every witness in this courtroom this week. You heard him talk to Dr. Terry. He's knowledgeable about expert depositions, about [how] the medical examiners can be consultants, forensic pathologists can be consultants. He knows that we have an expert. The

20

defense doesn't have to do anything. They are allowed. They have the presumption of innocence, and the State has the burden of proof. But can he get a forensic medical – forensic pathologist to come in and testify and dispute Dr. Terry, doesn't even have to be some county's [medical examiner]. Yes, he can do that. Can he get a firearms expert? Can he get an order saying the State has to provide the weapon and has to provide house ammo so that a firearms examiner of his choice can examine the weapon? Yes, he can do that. He's under no obligation to do so, but he can do that. He can have a firearms examiner come in and testify, but that examiner would have to respond to cross-examination. He would have to respond to, did you perform the test? How did you do it? Did you document it? How familiar are you with the weapon? Is it based on — is your knowledge of negligent or accidental discharge based on the fact that you've ever shot yourself in the course of examining a firearm? Any expert would be required to answer our cross-examination questions. They're under no duty to do that. But Mr. Sadow is well-versed. You've seen him, an experienced attorney. If there was something that could have controverted the State's evidence, what could be — what could he be saving it for? There's no extra innings here. This is the week we're trying this case. If there was someone out there, anyone — if the kinesiologist could come in and testify, you know what, I updated my research from 2003. It's no longer theoretical; it's no longer just about police. I've got things to say about this. They are able to do that. Recall Dr. Terry's testimony, looking at the wound there is no way this was self-inflicted. His arms aren't long enough. And I don't care about whatever Mr. Sadow says in terms of the movie the Matrix, what if his body is up in the air and he's falling and somehow the gun is pointed that way. We go to extremes to prove our case.

To the extent that Volkova argues that trial counsel's failure to object to this closing argument somehow exacerbated counsel's alleged error for failing to object to all of Dr. Terry's testimony about Robinson, the argument fails for the same reasons set forth in Division 3 (a). To the extent that Volkova attempts to argue this as a separate instance of constitutionally ineffective assistance, her claim also fails. It is well settled that prosecutors have wide latitude in conducting closing argument, and they may comment upon and draw deductions from the evidence presented to the jury. This includes drawing inferences about a party's failure to produce witnesses. See, e.g., *Long v. State*, 309 Ga. 721, 728 (2) (a) (848 SE2d 91) (2020) (prosecutor allowed to draw inferences from defendant's failure to call certain character witnesses); *McGee v. State*, 260 Ga. 178, 179 (4) (b) (391 SE2d 400) (1990). Volkova attempts to circumvent this precedent by relying on *Blige v. State*, 263 Ga. 244, 245 (2) (430 SE2d 761) (1993), for the proposition that, in order for a prosecutor "to comment concerning the failure of a defendant to

22

call a particular expert witness, the existence of that expert witness must be in evidence, as well as the fact that the defense has been provided with materials to be analyzed by that expert witness." (Citation omitted.) But no such comment was made here. The prosecutor did not name Robinson or any other particular expert during closing arguments.[15] In fact, prior to closing arguments, the prosecutor had been admonished by the trial court specifically not to mention Robinson, and the prosecutor followed this admonishment.

For all of the reasons set forth above, Volkova has not proven her claim of constitutionally ineffective assistance.[16]

*Judgment affirmed. All the Justices concur.*

---

[15] Because the prosecutor did not violate *Blige*'s holding in this case, we need not decide if *Blige* remains good law.

[16] Since we hold that Volkova's trial counsel did not perform deficiently in either of the instances enumerated, we need not consider Volkova's corollary argument that she was cumulatively prejudiced by multiple errors. See, e.g., *Morton v. State*, 306 Ga. 492, 500 (4) (d) (831 SE2d 740) (2019).

Decided March 1, 2021 —Reconsideration denied March 30, 2021.

Murder. Gwinnett Superior Court. Before Judge Whitner.

*Matthew K. Winchester, Jason M. McLendon*, for appellant.

*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Daniel Sanmiguel, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General,* for appellee.