**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 30, 2025**

# In the Court of Appeals of Georgia

A25A1440. PORTILLA v. THE STATE.

WATKINS, Judge.

After a jury found Diego Camilo Portilla guilty of aggravated sexual battery and four counts of child molestation,[1] the trial court denied his amended motion for new trial. Portilla appeals, arguing that the trial court erred in denying his *Batson*[2] challenge during jury selection, in allowing the introduction of his incriminating statement after finding that he was not in custody when he made the statement to law enforcement, in omitting all references to custody from the jury charge, and in allowing the State to introduce a witness's prior statement. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-6-22.2 (b); 16-6-4 (a) (1).

[2] See *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

Viewed in the light most favorable to the verdict,[3] the record shows that when the victim, J. C., was nine years old, she disclosed to a friend that her stepfather, later identified as Portilla, had inappropriately touched her. Later that day, the friend notified her mother, who contacted a teacher at the school, who then notified the school counselor. After interviewing both girls, the counselor contacted law enforcement and rode with J. C. to the sheriff's office where an investigator set up a forensic interview at the child advocacy center for the same day.

J. C., who was 12 years old at the time of trial, testified that Portilla had sexually abused her at times while her mother was working at night. The forensic interviewer also testified, and a recording of the interview was played at trial. J. C. disclosed that the abuse had taken place for about a year, that it was happening weekly, and that the last incident had occurred less than a week before the outcry.

Specifically, J. C. disclosed that Portilla told her to follow his instructions in exchange for extra screen time. J. C. recalled that Portilla touched her chest with his mouth, licked her neck, touched her genital area and buttocks area with his hand, and

---

[3] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

made her touch his penis. J. C. further disclosed that she had asked Portilla to stop and that she did not tell her mother because she was afraid that Portilla would hurt them.

Portilla voluntarily met with an investigator the following day. Following a *Jackson-Denno* hearing,[4] a redacted video recording of the interview was played for the jury. During the interview, Portilla disclosed an even more detailed account of his abuse of J. C. than J. C. had provided. In addition to admitting that he had inappropriately touched J. C., Portilla repeatedly blamed her, claiming that she had initiated it.

After the jury found Portilla guilty of all five counts against him, the trial court sentenced him to life imprisonment, to serve 40 years. Following a hearing, the trial court entered a detailed order denying Portilla's amended motion for new trial. This appeal followed.

1. Portilla contends that the trial court erred in denying his *Batson* challenge when the State used a peremptory strike to remove Juror 32, the only Hispanic person from the panel of prospective jurors.

---

[4] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

3

We review the denial of a *Batson* motion for clear error,[5] giving "great deference" to the trial court's finding regarding the third step of the process for evaluating claims of racial discrimination in the use of peremptory strikes.[6] Under that three-step process, "(1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent."[7]

In this case, the individual voir dire was not transcribed, so we must rely on the transcript from the hearing on the *Batson* challenge.[8] The record reveals that, after the jury was selected, Portilla made a *Batson* motion on the record, arguing that the State had used its final (the seventh of its nine available) peremptory strike on Juror 32. According to defense counsel, Portilla "is Hispanic himself, and [the State] used [its final] strike to

---

[5] See *Ford v. State*, 298 Ga. 560, 565 (6) (783 SE2d 906) (2016).

[6] See *Blackshear v. State*, 285 Ga. 619, 620 (3) (680 SE2d 850) (2009).

[7] (Citation and punctuation omitted.) *Suggs v. State*, 310 Ga. 762, 765 (3) (854 SE2d 674) (2021).

[8] See *Darden v. State*, 293 Ga. App. 127, 133 (3) (666 SE2d 559) (2008).

strike the only Hispanic" male in the jury pool. Further, Juror 32 was "the only Hispanic individual" in the jury pool who was reached during jury selection.

The record shows that the State used its first six strikes on Black prospective jurors, but defense counsel conceded that there were 12 prospective jurors who were "minorities" that the State did not strike. The prosecutor added that "the majority of the jury pool was made of minorities." After Portilla made his *Batson* challenge, the prosecutor gave race-neutral explanations for each of its strikes. Specifically, the prosecutor told the court that Juror 32 "seemed uninterested, and he also would ask questions, couldn't fully express himself, including the fact that he doesn't know his sister's ages. So I thought he wasn't a right fit for the details that would be involved in this case."

The trial court denied the *Batson* challenge, finding that the State had provided satisfactory, race-neutral reasons for its strikes. In its order denying Portilla's amended motion for new trial (in which this argument focused solely on the use of a strike on Juror 32), the court reaffirmed its findings made after the jury was selected, "[g]iven that disinterest and not being able to express oneself have been found to be race-neutral

reasons, when combined with the composition of the jury pool including those that were not struck or reached[.]"[9]

On appeal, Portilla summarily argues that "[t]he fact that Juror 32 may not have immediately recalled his sister's age" was merely a pretextual excuse for a race-based strike. However, based on the transcript of the *Batson* challenge, the trial court's ruling appears to have been sound. "In the absence of a voir dire transcript, we must presume that the trial court's conclusions were correct."[10] And, given the deference we are required to give to the trial court in this situation, we conclude that the trial court's acceptance of the State's facially race-neutral reasons for striking Juror 32 was not clearly erroneous.[11]

---

[9] (Citations omitted.)

[10] *Darden*, 293 Ga. App. at 134 (3); see also *Brown v. State*, 291 Ga. 887, 890, n.4 (2) (734 SE2d 41) (2012) (noting that, while "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose[,]" no transcript of the voir dire or jury selection appeared in the record).

[11] See *Toomer v. State*, 292 Ga. 49, 58 (2) (d) (734 SE2d 333) (2012) (affirming finding that the defendant failed to prove discriminatory intent and noting that the trial court could observe firsthand both the challenged jurors' demeanor during voir dire and the prosecutor's demeanor as he explained that one juror was not giving his full attention, another juror seemed disinterested, and a third juror's body language

2. Portilla argues that the trial court erred in admitting evidence of his interview with law enforcement, insisting that it was a custodial interrogation that had not been preceded by the giving of the *Miranda*[12] warnings.[13] We disagree.

"In reviewing a ruling on the admissibility of a defendant's statements where the facts are disputed, [the appellate court] accept[s] the trial court's factual findings and credibility determinations unless they are clearly erroneous, but [the appellate court] independently appl[ies] the law to the facts."[14]

---

and facial expressions suggested sympathy to the defense); *Rakestrau v. State*, 278 Ga. 872, 875 (3) (c) (608 SE2d 216) (2005) ("Inattentiveness during voir dire has been upheld as a valid race-neutral reason for striking potential jurors.").

[12] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[13] Although the heading of this claim of error is that "[t]he trial court erred in denying [his] *Jackson-Denno* Motion[,]" Portilla's argument focuses on whether he was in custody and should have been given a *Miranda* warning. Although he cites to his trial testimony that he was confused and felt threatened during the interview, we conclude that Portilla has abandoned any argument that his confession was involuntary. See Court of Appeals Rule 25 (d) (1). See generally *State v. Troutman*, 300 Ga. 616, 618 (2) (797 SE2d 72) (2017).

[14] (Citation and punctuation omitted.) *State v. Abbott*, 303 Ga. 297, 299 (1) (812 SE2d 225) (2018).

After hearing testimony from the lead investigator and the interviewing investigator and viewing a video recording of the interview, the trial court found that Portilla was not in custody when he made the statements. The trial court made the following factual findings:

> Here, the interview lasts approximately 45 minutes. Portilla was called by [the lead investigator] and asked to come to the [Douglas County Sheriff's Office] for an interview, which occurred a week after the victim's initial outcry. Portilla was met downstairs by one of the investigators dressed in plain clothes and with no sidearm and shown to a room on the third floor, which is a secure *access* floor.[15] Visitors have to be with someone that has authority to enter the third floor. However, as egress is unsecured, visitors can leave by the stairs or elevator on their own. Portilla followed [the interviewing investigator] into the room and was carrying a cup of what appeared to be coffee. The door, which has not been shown to be locked, is closed. The investigator could be heard talking before entry. After he sits down, but before the investigator obtains from Portil[l]a background information, Portilla begins talking including mentioning the [Division] of Children and Family Services. The investigator tells Portilla that he is not under arrest at least three times and is dressed in plain clothes and does not have a firearm on his belt. Portilla was not handcuffed. Portilla and the investigator sat less than a foot apart. At the time of the interview, no charges were pending and an arrest warrant had not been sought. J. C. and other individuals had been interviewed before Portilla.

---

[15] (Emphasis in original.)

The investigator did not read Portilla his *Miranda* warnings. Portilla corrects the investigator when necessary, is able to respond appropriately to questions, and denies certain things. Portilla appeared able to understand and communicate in English without the need of an interpreter. There is no evidence of force or duress being applied by the investigator. Portilla never requested an attorney or to stop the interview and did not take any actions to stop the interview such as walking out or refusing to answer questions.

Portilla does not dispute any of the foregoing but argues that there was no evidence that he was informed that he was free to leave once he went up the elevator or that he was told how to exit the secure area.

"In general, *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary."[16]

As noted above, it is undisputed that Portilla had not been formally arrested; thus, the critical inquiry is whether a reasonable person in his situation would have perceived that he was in custody in these circumstances. Portilla voluntarily went to the sheriff's

---

[16] (Citations and punctuation omitted.) *Reid v. State*, 306 Ga. 769, 775 (2) (b) (833 SE2d 100) (2019).

office for an interview in an unlocked room, during which he was repeatedly told that he was not under arrest.[17] He was not physically restrained, and both the interviewing and the lead investigator testified that Portilla was free to leave at any time. Even if Portilla did not understand that he did not need a key card to leave the secure floor, other circumstances should have indicated that to Portilla that he was free to leave.[18] Based on the foregoing, we conclude that the record supports the trial court's finding.

3. In a related argument, Portilla contends that the trial court erred by removing all mention of "custody" when instructing the jury regarding the manner in which it should consider statements made by a defendant. We disagree.

---

[17] See *Drake v. State*, 296 Ga. 286, 289-290 (2) (766 SE2d 447) (2014).

[18] See *State v. Rumph*, 307 Ga. 477, 479 (837 SE2d 358) (2019) (Defendant was not in custody where interview room door was often left open and the defendant had his keys and cell phone with him; "[a]lthough an officer accompanied [Defendant] during his breaks, he did so because guests were not allowed to move about unaccompanied through secure areas of the sheriff's office."); *State v. Berrien*, 364 Ga. App. 217, 223-224 (1) (874 SE2d 430) (2022) (Defendant was not in custody, even though he would have needed assistance to leave the building, because he was neither locked in the interview room nor blocked from its door.); see also *Ward v. State*, 313 Ga. 265, 274-275 (4) (b) (869 SE2d 470) (2022) (Defendant was not in custody, even though the interview took place in an interview room at the back of a police station and an officer accompanied Defendant when he left the room during breaks.).

"[A] trial court's refusal to give a requested jury charge is not error unless the request is[, inter alia,] adjusted to the pleadings, law, and evidence[.] And this Court reviews a trial court's refusal to give a requested jury charge under an abuse-of-discretion standard."[19]

In *Volkova v. State*,[20] our Supreme Court cited our (non-binding) decision in *Dunson v. State*, which held that because the trial court had determined that the defendant was not in custody and thus not entitled to *Miranda* warnings when he made a pre-arrest statement, it was not proper to instruct the jury that the protections applied.[21] The *Volkova* Court reached the same conclusion,[22] adding:

> These precepts are reflected in Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.32.15, which states: "If the court determines the defendant is/was in custody, the court should give the voluntariness and *Miranda* charges. If the court determines the defendant

---

[19] (Citations and punctuation omitted.) *Parrish v. State*, 362 Ga. App. 392, 406 (3) (868 SE2d 270) (2022).

[20] 311 Ga. 187, 191-192 (2) (855 SE2d 616) (2021).

[21] 309 Ga. App. 484, 490 (5) (711 SE2d 53) (2011) (physical precedent only).

[22] 311 Ga. at 192 (2) (noting that not only had the trial court determined that the defendant was not in custody at the time she made her statement, she had conceded the issue at her *Jackson-Dunno* hearing).

is/was not in custody, the court should give the voluntariness charges only."[23]

Thus, in light of our conclusion in Division 2, supra, this claim of error is without merit.

4. Portilla argues that the trial court erred in having J. C.'s mother read to the jury portions of a victim impact statement that she did not recall writing. We find no reversible error.

In response, the State: acknowledges that the written statement did not refresh the mother's recollection; does not argue that it was admissible as a prior inconsistent statement; and appears to concede that the document should not have been read to the jury.[24] However, the State contends (as the trial court found in denying Portilla's amended motion for new trial ) that any error was harmless.

"Even an error of constitutional magnitude may be considered harmless if the State can prove beyond a reasonable doubt that the error did not contribute to the

---

[23] (Emphasis omitted.) Id.

[24] See generally OCGA §§ 24-6-612 (a) (permitting a witness to "use[ ] a writing to refresh his or her memory while testifying[ ]"); 24-6-613 (b) (providing in part that "extrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement").

verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming."[25]

During its redirect examination of J. C.'s mother, the State announced that it intended to attempt to refresh her memory using her victim impact statement. The mother testified that she recognized her handwriting on the form but that she did not recall filling it out or any of its contents. Although the statement did not refresh her recollection, the State proceeded to have her read portions of the statement into the record.

Specifically, when asked to describe the crime on the form, the mother wrote that her "daughter was allegedly touched sexually by [the mother's] fiancé[;]" that the emotional impact on the family was that the mother "lost her fiancé, [her] son lost his father, [she was] alone with no job being in school, [and was] emotionally drained because of this." In response to the form's invitation to "share anything else that [she] would like to express[,]" J. C.'s mother testified that her answer was that she thought Portilla needed rehab, rather than a lengthy jail sentence, and that he was a hard-working

---

[25] (Citation and punctuation omitted.) *Armstrong v. State*, 310 Ga. 598, 605 (3) (852 SE2d 824) (2020).

man with children who needed him. The mother acknowledged that the statement did not mention any impact on J. C.

Although Portilla argues that these "out-of-court statements potentially . . . engendered more sympathy for J. C. based on the way the jury could have perceived [the mother's] sympathy for [ ] Portilla[,]" this does not rise to an error of constitutional magnitude. The mother testified on direct that she had to get a job and move to Tennessee after the outcry, that she continued to have contact with Portilla, including bringing their son to Atlanta for visits, and that she had written a letter to the court to say that Portilla was a great father.

Thus, the portions of the statement that were read to the jury were largely cumulative of the mother's properly admitted testimony, neither of which related to the actual charges against Portilla. In light of the strong evidence of guilt in this case, including J. C.'s testimony and recorded forensic interview and Portilla's own admission in his recorded non-custodial interview, we conclude that any error was harmless as it is highly probable that it did not contribute to the jury's verdict.[26]

*Judgment affirmed. Brown, C. J., and Barnes, P. J., concur.*

---

[26] See *Merritt v. State*, 311 Ga. 875, 882 (3) (a) (ii) (860 SE2d 455) (2021).